[No. 20823.  In Bank. — December 28, 1891.]

THE PEOPLE, RESPONDENT, *v.* MAY WILLARD, ALIAS MAY COLLINS, APPELLANT.

CRIMINAL LAW — TESTIMONY OF CONVICT — CONSTRUCTION OF PENAL CODE — HABEAS CORPUS AD TESTIFICANDUM. — Although under section 1567 of the Penal Code a defendant in a criminal case is allowed the right to have the process of the court to compel the attendance of a convicted prisoner as a witness in his behalf, whether such prisoner is in the state prison or the county jail, yet the power conferred by that section should be exercised under the same circumstances and with the same restrictions under which the common-law courts were accustomed to issue the writ of *habeas corpus ad testificandum.*

ID. — SHOWING REQUIRED — DISCRETION. — The order for process to compel the attendance of a convicted prisoner as a witness should not be made, except upon a very strict showing of the materiality of the testimony, and the necessity of securing the attendance of the prisoner as a witness, and upon previous notice to the state of the application; but when such notice has been given, and a case of materiality of the evidence and apparent necessity is made out, and the good faith of the applicant also appears, the court ought, in the exercise of its discretion, to make the order for the attendance of the prisoner as a witness.

ID. — RECEIVING STOLEN GOODS — EVIDENCE — SUBSEQUENT DISTINCT OFFENSES. — Where an information for receiving stolen goods alleged that the property was received by the defendant on or about a certain date, and it is proved to have been stolen a few days after that date, the prosecution cannot, for the purpose of showing that the property was received by the defendant with a guilty knowledge that it had been stolen, introduce evidence that a large number of other articles, found in the house occupied by the defendant and the thief some three months thereafter, had been stolen by means of burglaries committed subsequent to the date complained of, and relied upon in evidence.

ID. — FORMER ACQUITTAL — GOODS RECEIVED AT SAME TIME. — If goods stolen from different persons are received at the same time, the offense is single, and a plea of former acquittal of a charge of receiving goods stolen from one of such persons is a good plea to a charge of receiving any other stolen goods at the same time.

ID. — EVIDENCE — MARRIAGE OF DEFENDANT WITH THIEF — FORMER MARRIAGE. — Where the defendant claimed to be the wife of the thief, and therefore not guilty of receiving the stolen goods from him, her admis-

sion of a former marriage, and refusal to disclose the name of her former husband, and her failure to show a dissolution of the former marr.age by death, divorce, or disappearance, are sufficient to discredit her naked statement that she was a single woman at the date she claimed to have been married to the thief, and are sufficient to sustain an implied finding of the jury against a lawful marriage between her and the thief.

ID. — TRIAL — PREJUDICIAL REMARKS OF COURT — SELF-CONTRADICTION OF DEFENDANT — PROVINCE OF JURY. — It is prejudicial error for the court, in the presence and hearing of the jury, when ruling upon an objection to the admission in evidence of a letter written by the thief to the defendant, in commenting upon the testimony of the defendant in relation to it, to remark that "she had contradicted herself several times in the record," and to reiterate such remark, after an exception by the defendant, with the additional remark that "that is the chief reason why I admit those letters in evidence." Such remarks, being unretracted and unexplained, amounted to a statement of the opinion of the court that the witness had sworn falsely, and was, in effect, charging the jury as to matters of fact.

ID. — CONSISTENCY OF PROSECUTION. — The prosecution cannot go upon one theory to make out its case, and upon a wholly inconsistent theory to meet a special defense.

APPEAL from a judgment of the Superior Court of Santa Barbara County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Hall & Taggart, J. W. Taggart,* and *W. S. Day,* for Appellant.

*John J. Boyce, Attorney-General Hart,* and *Deputy Attorney-General Layson,* for Respondent.

BEATTY, C. J. — Appeal from a judgment of conviction on a charge of receiving stolen goods, and from an order denying defendant's motion for a new trial.

A preliminary statement of the leading facts of the case is necessary to a proper understanding of the points urged in support of the appeal.

For about eighteen months prior to March 11, 1889, the defendant and one Frank Willard lived together in the city of Santa Barbara, holding themselves out as man and wife, and the defendant claims that they were in fact married by contract in San Bernardino in August, 1884,

and from that time openly assumed towards each other
the mutual relations of husband and wife. The people,
on the other hand, contend that they were not married,
but were living in a meretricious relation. The rulings
of the court as to the evidence offered upon this matter
present one of the principal questions in the case. While
the defendant and said Willard were so living together
under the assumed name of Strohm, during the months of
November and December, 1888, and January, February,
and March, 1889, a series of burglaries was committed in
Santa Barbara, and a large quantity of personal property
was stolen. On the morning of March 11, 1889, officers
with search-warrants visited the house occupied by de-
fendant and said Frank Willard, and found most of the
stolen property therein. The principal portion was
found packed in two ordinary packing-cases, which were
nailed up preparatory for shipping; the remainder was
found in two or three trunks, along with articles of wear-
ing apparel, etc., of defendant and said Frank Willard.
One of these trunks was claimed by defendant, and in it
were found various articles belonging to Mrs. Hazard,
described in the information upon which she has been
convicted. Informations against Frank Willard for
burglary were filed, upon two of which he was convicted,
and sentenced to be imprisoned at Folsom for a long
term of years. At the same time an information was
filed against the defendant, charging her with receiving
certain property stolen from one Williams at about the
same time the Hazard property was stolen. Upon this
information she was tried and acquitted. Thereafter the
present information was filed, charging her with receiv-
ing the Hazard property, to which she interposed a plea
of not guilty, and a further plea of former acquittal,—
or of former jeopardy, as her counsel denominates it,—
claiming that the two charges of receiving the Williams
property and the Hazard property include the same
identical offense, making an acquittal on the first infor-
mation a bar to any conviction on the second. At her
first trial, Frank Willard testified as a witness in her

behalf, to the effect that he had brought the stolen property into the house in her absence, had packed most of it in the packing-cases and nailed them up, and without her knowledge had put a few articles in her trunk, which was open and to which he had a key. The jury at this trial failing to agree, the case was again set for trial, and Frank Willard having in the mean time been confined in the state prison at Folsom, defendant applied to the superior court for an order for his attendance at the trial as a witness in her behalf. Her application being refused, she moved in this court for a writ of mandate to the superior court, commanding it to make such order for the attendance of Frank Willard as a witness. After a hearing, this court refused to issue the writ, upon the ground that the making of such orders is a matter of discretion, which cannot be controlled by mandate. ( *Willard* v. *Superior Court*, 82 Cal. 456.) Thereupon the defendant caused Frank Willard's deposition to be taken, which was used on her trial, and the jury again disagreed. The case was then set down for trial a third time, whereupon defendant renewed her application to the superior court for an order for the attendance of Frank Willard as a witness. The court again refused to make the order, and such refusal is one of the errors assigned in support of her appeal. With this preliminary statement, we proceed to consider the points which counsel have urged in the argument.

It is not by any means clear that the bill of exceptions in this record is sufficient to enable us to review the ruling of the superior court on defendant's application for an order for the attendance of Frank Willard as a witness; but since the judgment must be reversed, and the cause remanded upon other grounds, and since this question must again arise in the further progress of the case, we consider it better to disregard respondent's objections to the record in this particular, and to pass upon the merits of this question.

Convicted felons are, by the statute, made competent witnesses (Code Civ. Proc., secs. 1878–1881); and the

constitution (art. I., sec. 13) confers upon defendants in criminal cases the right " to have the process of the court to compel the attendance of witnesses " in their behalf.  Before the law was so amended as to allow convicted felons to testify, prisoners awaiting trial, and others not rendered infamous by conviction of felony, were competent witnesses, and there was a common-law writ of *habeas corpus ad testificandum*, which was the appropriate process for securing their attendance in court.  (Bac. Abr., tit. Habeas Corpus.)  By the code provisions above cited, prisoners, after conviction, were put upon the same ground as prisoners awaiting trial, with respect to their competency as witnesses, and the same process that will compel the attendance of the latter will compel the attendance of the former.  Section 1567 of the Penal Code, so far as it relates to the attendance of witnesses, provides for an order exactly equivalent to the writ of *habeas corpus ad testificandum*, and, as will be seen by reference to its terms, it is made equally applicable to the case of a prisoner in the state prison and a prisoner in the county jail.

We think the power conferred by this section of the code should be exercised under the same circumstances and with the same restrictions under which the common-law courts were accustomed to issue the writ of *habeas corpus ad testificandum*.  In order to procure the issuance of that writ, it was necessary to make an application to the court or judge, and it was necessary to make a strict showing of the materiality of the testimony and the necessity of securing the attendance of the prisoner as a witness.  (Bac. Abr.; Taylor on Evidence, secs. 1272 et seq.)  We feel that this is a privilege extended to persons accused of crime which is capable of gross abuse unless strictly guarded, and we do not wish to be understood as holding that the order should be made, except upon a very strict showing, and upon previous notice to the state of the application, but when such notice has been given and a case of apparent necessity is made out, or in other words, when the materiality of

the evidence and its importance is clearly and satisfactorily shown, and the good faith of the defendant making the application also appears, the court should, in the exercise of its discretion, make the order for the attendance of the prisoner as a witness. In this case it was shown, among other things, that Frank Willard and defendant were the occupants of the house in which the stolen property was found, and that she could prove by him, and no other person, that she had not received it. She set out specifically the testimony he had given on her first trial, which, if true, completely exonerated her. It covered the whole issue in the case, and completely rebutted the charge against the defendant. It was the only evidence obtainable; it related to matters of detail of considerable variety and complication; it was to be offered in rebuttal to testimony of the state which was liable to vary in its details from that previously given.

We think this presents a case upon which the court ought properly, in the exercise of its discretion, to have ordered the attendance of the prisoner as a witness. We wish to be understood as expressing ourselves upon this point very guardedly, in order not to open the door to the abuse of the right which the statute and constitution seem to confer.

The information in this case alleges that the property of Mrs. Hazard was received by the defendant on or about the eighth day of December, 1888, and the evidence shows that it was stolen between the 7th and 11th of December. For the purpose of showing that it was received by the defendant with a guilty knowledge that it had been stolen, the prosecution introduced evidence that a large number of other articles found in the house occupied by the defendant and Frank Willard on the 11th of March, 1889, had been stolen by means of burglaries committed, some of them prior to December 8th, and some of them subsequent thereto. The defendant objected to the evidence in regard to subsequent burglaries, on the ground that they and the possession of their fruits could have no tendency to prove guilty

knowledge on December 8th. The evidence was admitted over her objection, and she duly excepted. We think the court erred in this ruling. There is no doubt that when a defendant is shown to have received stolen goods from a thief, evidence of previous dealings with the thief in like transactions is competent to show that defendant at the time knew that the property had been stolen; but we have been cited to no authority, and we know of none, which holds that evidence of subsequent dealings is admissible. Several of the cases cited by respondents show that such evidence is not within the rule, and the reason for the distinction is manifest. The question to be determined is as to the state of mind of the receiver at the date of the receipt, and subsequent dealings can throw no light upon that. It is no answer to this proposition to say that the only evidence of the receiving of the stolen property by defendant was the finding of it in her possession on March 11, 1889, — a date subsequent to any burglary proved. It is true that this evidence did not necessarily show that she had received it before that day. Indeed, it does not by itself prove anything else, but the circumstances of the case, including the manner in which defendant and Frank Willard were living together during the time when the burglaries were committed, might have warranted the inference that he gave to defendant the property stolen from different houses at the time of the respective burglaries. And this, indeed, was the theory upon which the prosecution rested; for if it had been claimed that the goods were received on or about March 11th, the defendant's plea of former acquittal could not have been avoided. The same proof, and the only proof, of a receipt of the Hazard goods on or about March 11th equally proved a receipt of the Williams goods at the same time, and if both were received at the same time it was one offense, and the acquittal on the first charge was a bar. (*People* v. *Stephens*, 79 Cal. 428.) The prosecution was therefore driven, in order to obviate the plea of former acquittal, to proceed upon the theory that

the property described in the information was received at or about the time it was stolen; and that such was the theory of the case for the people is clearly demonstrated by the instructions given to the jury at their request, as well as by the argument here.

We are not to be understood as denying that there was evidence to sustain a finding to that effect. All we decide is, that on that theory of the case, evidence of the matters coming to the knowledge of the defendant subsequently to the date charged, and relied on, was not competent to prove guilty knowledge, and its admission was error.

It is contended by the appellant that the evidence shows that she was the wife of Frank Willard, and therefore could not be guilty of receiving stolen goods from him. The law of this proposition is conceded by the state, but the fact is denied. We think there is evidence to sustain the implied finding of the jury against a lawful marriage. The admission by defendant of a former marriage, her refusal to disclose the name of her former husband, and her failure to show a dissolution of the marriage by death, divorce, or disappearance, were sufficient to discredit her naked statement that she was a single woman at the date she claims to have been married to Willard. The letter, exhibit B, if written by Willard and received by her, also tends to prove a meretricious union. We think the evidence was sufficient to show that it was so written and received. It was postmarked Los Angeles, and directed to defendant at San Diego, at a date when he is shown to have been at the former and she at the latter place. It begins, "My darling little wife," is signed "Frank," and was found in her possession among a number of other letters addressed to her.

The court, in ruling upon an objection to the admission in evidence of the letter, exhibit B, in commenting upon the testimony of the defendant in relation to it, remarked, in the presence and hearing of the jury, that "she had contradicted herself several times in the

record," to which language the defendant excepted. Whereupon the court reiterated the statement, adding, "that is the chief reason why I admit those letters in evidence." We do not think these remarks were necessary to explain the ruling of the court, and we do think that, unretracted and unexplained, after they had been objected to, they must necessarily have prejudiced the case of the defendant. She was her own sole witness, and, in effect, the jury were told by the court that she was unworthy of credit. Even if her self-contradictions had been much more evident than they appear to us, the judge should not have given his opinion to the jury that she had sworn falsely. "Judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law." (Const., art., VI., sec. 19; *McMinn* v. *Whelan*, 27 Cal. 319.)

We do not think there was any error in the instructions given at the request of the people. They are purely hypothetical, and contain no assumptions of criminating facts. Nor do we think the defendant can have been prejudiced by the modification of her instruction 15, in view of the theory upon which the prosecution conducted the case with reference to the time of receiving. The evidence would certainly not have justified the finding of the jury against the defendant on her plea of former acquittal, if the prosecution had been based upon the theory of a receiving on or about March 11th. But, as we have seen, the theory was of a receiving at or about the date of the burglary. The evidence was sufficient on that theory to justify a finding against the special plea; but, as we have seen, on that theory incompetent evidence of subsequent dealings was introduced to prove guilty knowledge. The prosecution could not go upon one theory to make out its case, and upon a wholly inconsistent theory to meet the special defense. The evidence of independent and exclusive possession by defendant of the stolen property was sufficient to sustain the verdict as to that point.

The record does not show, so far as we can discover,

that the talesman Schofield was challenged for actual bias, and therefore we cannot review the rulings of the court upon the questions asked him on *voir dire.*

For the errors above pointed out, the judgment and order are reversed.

DE HAVEN, J., SHARPSTEIN, J., HARRISON, J., and GAROUTTE, J., concurred.

McFARLAND, J., concurring. — I concur in the judgment of reversal; but I fear that some language in the leading opinion will be construed as holding that a defendant has a constitutional right to have a convict brought out of the state prison, whenever the former is ready to swear that the latter is a material witness. It is admitted, however, that whether or not a convict will be ordered out of prison into court (and his term of imprisonment thus interfered with) depends upon the discretion of the court, and I cannot understand how a constitutional right can depend upon the discretion of a judge. I think that the law upon the subject is simply this: the statute gives a court discretion to break the continuity of a convict's term of imprisonment by ordering him to be brought out of prison into court as a witness; and if the court abuses its discretion by not making the order when it clearly ought to have been made, such abuse is ground for a reversal of the judgment, — just as abuse of discretion in refusing to grant a continuance may be ground for reversal. I do not think that there is any constitutional question involved. If the word "process," as used in the constitution, is to be construed as referring to the extraordinary proceeding provided for in section 1567 of the Penal Code, then I see no escape from the proposition that defendants may in all cases have material witnesses brought out of the state prison, and that the discretion of a court cuts no figure in the matter. And I think further, that courts would not abuse their discretion in refusing such orders except in peculiar and extraordinary cases, — some of which are

referred to in the opinion of Mr. Justice Paterson in *Willard* v. *Superior Court*, 82 Cal. 459. In the case at bar there were some peculiar circumstances which made it, I think, the duty of the court to order the witness brought into court.

Upon other questions I concur in the opinion of the chief justice.