[Crim. No. 810.  Department Two.—December 14, 1901.]

## THE PEOPLE, Respondent v. WILLIAM BAUMGARTNER, Appellant.

CRIMINAL LAW—DISINTERMENT OF DEAD BODY—CONSTRUCTION OF CODE.—Section 290 of the Penal Code, which provides that one who "disinters" the dead body of a human being without authority of law is guilty of a felony, is designed to aim at the crime commonly called "body-snatching," and does not apply to the mere exposing of the body to the elements while in the grave, but requires its removal from the place of burial to constitute the offense.

APPEAL from a judgment of the Superior Court of Merced County. E. N. Rector, Judge.

The facts are stated in the opinion.

V. G. Frost, and Ben Berry, for Appellant.

Tirey L. Ford, Attorney-General, and A. A. Moore, Jr., Deputy Attorney-General, for Respondent.

CHIPMAN, C.—Defendant was convicted of felony upon an information charging defendant and two others with the crime of violating sepulture, in that they "did willfully . . . disinter from its place of burial . . . the dead body of the late Wong Quois Sing, a human being, the said dead body not being the dead body of a relative of [naming defendants], or either of them, removed for reinterment, contrary," etc. The information was under section 290 of the

Penal Code, which reads: "Every person who mutilates, disinters, or removes from the place of sepulture the dead body of a human being without authority of law, is guilty of a felony. But the provisions of this section do not apply to any person who removes the dead body of a relative or friend for reinterment."

A brief statement of facts is correctly given by the respondent as follows: "In so far as the proof of the crime is concerned, it is only necessary, for the purposes of this appeal, to state that during the month of February, 1901, a Chinaman was buried in the cemetery at Los Banos. It was believed by the defendants that a large sum of money was buried on his person. In order to secure the money, they opened the grave and the coffin, without removing said coffin from the grave. They had searched the body only to the extent of discovering a ten-cent piece and a counterfeit dollar, when they were frightened away."

The court instructed the jury as follows: "To disinter the dead body of a human being, as the term ' disinter ' is used in our Penal Code, means to uncover, to expose the dead body of a human being that had been interred to light and air; in other words, the body or some part thereof must be actually exposed to view. If the body should be uncovered to such an extent that in all probability it would be damaged or mutilated by animals or the elements more than it would have been so damaged without such uncovering, then the body would be disinterred in contemplation of law. To constitute a disinterment it is not necessary that the body should be removed from the place of sepulture."

Appellant contends that this instruction was error. It is not pretended that the body was removed from its resting-place, nor that there was any intention to remove it. The desecration had for its only object to secure the money supposed to be buried with the body. At common law it was an offense to treat the dead human body indecently, and it was indictable to wantonly or illegally disturb a dead human body after burial, to expose such body without proper burial, to sell it, for mere purposes of private gain, for dissection, or to disinter it, unless so directed by the deceased in his lifetime or by his relatives after his death, with consent of the public authorities and owners of the ground where this is requisite.

(2 Wharton's Criminal Law, sec. 1432a.) Most of the states of the Union now have statutes reaching the various offenses known at common law. To wantonly or illegally disturb a dead human body seems to have been a separate and different offense from disinterring the body. Frequently the remains of the deceased are placed in a vault above ground, the casket being in plain view through the openwork of the iron vault door. To force this door open, remove the lid of the casket, and take from the body jewelry or money or its vestments, without removing the body, could not be said to be disinterment. It would be an offense at common law, but not the crime of disinterment; nor would it come within the statute punishing the removal of a body from " its place of sepulture." To lay bare the coffin resting at the bottom of an ordinary grave, and to take off the lid of the coffin and appropriate money or jewelry found on the body, would not, we think, be to " disinter " the body, as that term is commonly understood. Lexicographers define the word "inter" to mean, " To bury in the ground; to cover with earth; to inhume." " Disinter " is defined, " To unbury; to take out of the grave; to disentomb; to exhume." (Worcester.) Much the same definitions are given by Webster, and also by the Encyclopædic Dictionary. " Disinter " is not a technical word, nor has it acquired a peculiar meaning in law; it must, therefore, " be construed according to the context and approved usage of the language." (Pen. Code, sec. 7, subd. 16.) The statute seems to have in view, by the use of the word " disinter," the exhuming or removing a body that has been buried in the earth; and by the terms " removes from the place of sepulture," it has in contemplation the removal of a body from a vault, and not buried in the earth. I think there can be little doubt that the common understanding of the act " to disinter a buried human body " is not only to expose it to the elements where it lies, but to remove it. The statute is aimed at the crime commonly called " body-snatching." The motive in removing the body might not be material, but the offense is not complete unless the body is removed from its resting-place. (See note 4 to sec. 1432a, Wharton's Criminal Law, *supra.*) The acts of defendant were highly reprehensible, and perhaps such conduct should be made a felony; but we do not think the legislature has made it a felony by the section in question.

The conceded facts show that the crime was not made out, except upon the construction given the statute by the learned trial judge in his instruction to the jury. As we think he erred, the conviction cannot stand.

It is not likely that on a second trial any different state of facts would appear, and we, therefore, deem it unnecessary to notice other alleged errors.

The judgment of conviction should be reversed.

Haynes, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment of conviction is reversed.

.McFarland, J., Temple, J., Henshaw, J.,