[Crim. No. 4623.   In Bank.   Aug. 31, 1945.]

THE PEOPLE, Respondent, v. FRED ROBERT SMITH, Appellant.

Morris Lavine for Appellant.

Robert W. Kenny, Attorney General, and Carl S. Kegley, Deputy Attorney General, for Respondent.

SPENCE, J.—Defendant was charged in five counts with receiving stolen property, consisting of a gun and five radios. The cause was tried by the court sitting without a jury. The uncontradicted evidence showed that the three radios referred to respectively in counts 2, 4 and 5 had been stolen at various times by one Stepzinski from the automobiles of the respective owners named in said counts, and that these three radios, together with a fourth radio, had been received by defendant from Stepzinski in one transaction at defendant's radio shop on November 10, 1943. The trial court found defendant guilty on counts 2, 4 and 5, and not guilty on counts 1 and 3. Three separate judgments were entered. In the first judg-

ment, relating to count 2, defendant was sentenced to six months in the county jail. In the second judgment, relating to count 4, defendant was sentenced to six months in the county jail, which sentence was ordered to run consecutively with the sentence relating to count 2. In the third judgment; relating to count 5, defendant was sentenced to six months in the county jail, which sentence was ordered to run consecutively with the sentence relating to count 2 and concurrently with the sentence relating to count 4. Defendant appeals from the judgments of conviction.

Defendant contends that the evidence was insufficient to sustain his conviction. He stresses the fact that there was no evidence of "buying *and* receiving" stolen property, as alleged in the information, as it was not shown that he had paid anything to Stepzinski. It was not necessary, however, to show that any payment had been made as section 496 of the Penal Code reads in the alternative and the offense therein defined is committed when a person either "buys *or* receives any personal property, knowing the same to have been stolen." (Italics ours.) We therefore pass to defendant's main argument under this heading, which is that there was no evidence to show that defendant received the property from Stepzinski "with guilty knowledge."

There was direct evidence showing such guilty knowledge in the testimony of Stepzinski who testified for the prosecution. The evidence showed that defendant was in the business of repairing and selling car radios, although it was conceded that he had no license permitting him to engage in such sales. He had known Stepzinski for about two years. Stepzinski testified that about a week before November 10, 1943, he called at defendant's shop and proposed that he bring defendant some radios; that upon inquiring of defendant "if he needed any radios," defendant answered, "Yes"; that he told defendant that he could get some—that he "would take them out of cars"—and defendant answered, "Bring them around."

After Stepzinski had stolen the radios involved in counts 2, 4 and 5 of the information, together with others, he took the radios in his automobile to defendant's shop. These radios still had the cut wires attached to them. He held a brief conversation with defendant outside the shop and then carried two radios into the shop and placed them on the counter. He

then returned to his car and brought in two more which he placed on the floor. Defendant picked up two of the radios and moved them behind the service counter. Police officers then entered the shop and arrested the two men.

In addition to the direct evidence of Stepzinski, there was other evidence bearing upon the knowledge, motives and intentions of defendant. Just prior to the arrest, the officers asked Stepzinski if he had brought in some radios and he replied, ''No.'' Defendant said nothing, letting Stepzinski's answer stand unqualified. The officers took six radios from the shop, among which were the three which were definitely identified at the trial by expert testimony covering the matching of the cut wires. After the arrest, the officers asked defendant if he had other radios and he answered that he had only the three which were left in the shop. He admitted at that time that he had previously told Stepzinski that if he would bring in some radios, he (defendant) would buy a few. Later the officers located a room and garage rented by defendant at a place other than his residence. They found there thirty-two car radios of various makes and also a pistol, a holster and a clip. When questioned about these, defendant told the officers that he had bought all of them from an ex-convict named Dave Wagner. He stated that he had bought not more than fifty radios from Wagner and, when the officer asked how long he had been buying ''hot radios'' from Wagner, he stated that he had been getting them from Wagner for about a year. When asked whether he knew that the radios had been stolen, he admittedly replied, ''No, I couldn't say that I knew definitely they were stolen radios.'' And when further asked whether he ''suspicioned'' they were stolen, he admittedly replied, ''Not necessarily, because the radios were always clean and no wires cut.'' On the trial, he testified, however, that if a radio was brought into his shop with the wires cut, ''I would say it was stolen or taken out of a car by someone that was careless or reckless.'' He further admitted on the trial that he might have told the officers that the radios he got from Wagner were ''a little off color'' and that he knew Wagner ''had done time.'' But in his testimony, he stated that he had not bought any radios from Dave Wagner; that he had mentioned that name in talking to the officers ''purely for the purpose of answering at the time'' as he was then ''willing to tell lies . . . about the radios'' in his possession.

It is unnecessary to detail further the admissions, evasive answers and contradictory statements given by defendant. The evidence which has been summarized, strongly corroborated the direct evidence of Stepzinski concerning defendant's guilty knowledge, and the evidence as a whole amply supported the finding that defendant had been guilty of the crime of receiving stolen property as defined in section 496 of the Penal Code. (*People* v. *Jacobs,* 73 Cal.App. 334 [238 P. 770]; *People* v. *Cox,* 117 Cal.App. 254 [3 P.2d 581]; *People* v. *Juehling,* 10 Cal.App.2d 527 [52 P.2d 520].) This conclusion is entirely consistent with the decision in *People* v. *Lima,* 25 Cal.2d 573 [154 P.2d 698], as the reversal in the cited case was based upon the "total absence of evidence corroborative of the accomplices."

Defendant further contends that the trial court erred in sustaining an objection to the following question asked of Stepzinski on cross-examination, "In other words you expect something out of this, don't you?" While this question was one of many directed at the witness to determine his "state of mind," the subject had been exhaustively covered in the prior questioning before the objection to the continued probing was finally sustained. He had already testified that he had been promised nothing and that he had not been led to believe that he would be accorded any leniency because of his testimony relating to his dealings with defendant. An examination of the record shows that defendant's right of cross-examination was not unduly curtailed (4 Cal.Jur. 10-Yr.Supp. § 600, pp. 1001 et seq.; *People* v. *Stanhope,* 37 Cal.App.2d 631, 635 [99 P.2d 1075]); and that the order sustaining the above-mentioned objection could not have constituted prejudicial error.

Defendant's final contention is that the evidence established at most but a single offense, and that the trial court committed prejudicial error in finding defendant guilty on three separate counts and imposing separate sentences on said counts. In other words, defendant contends that the simultaneous reception of several articles of stolen goods constitutes but a single offense regardless of the fact that the articles so received may have been previously stolen from several different owners. Both reason and authority indicate the soundness of this contention.

The crime of receiving stolen goods consists of either

buying or receiving personal property with knowledge that it has been stolen. (Pen. Code, § 496.) The gist of the offense is the purchase or receipt of the stolen goods with guilty knowledge, but the particular ownership of the goods is not an element of the crime. Neither the legal nor moral character of the act is affected in any way by the fact that the stolen property may have belonged to several persons rather than to a single person. ▮▮ The crimes of larceny and of receiving stolen goods are separate and distinct (*People* v. *Hawkins*, 34 Cal. 181; 22 Cal.Jur. § 2, p. 556), and the pleading and proof of successive thefts from different owners enters into the pleading and proof of the crime of receiving such stolen property in a single transaction only for the purpose of showing that the property had in fact been stolen and that the person charged had guilty knowledge.

These views find support in the conclusions reached in *People* v. *Willard*, 92 Cal. 482 [28 P. 585], where the court said at page 488: ''The same proof, and the only proof, of a receipt of the Hazard goods on or about March 11th equally proved a receipt of the Williams goods at the same time, and if both were received at the same time it was one offense, and the acquittal on the first charge was a bar.'' Further support is found by analogy in the authorities dealing with the crime of larceny, which authorities hold that the theft of several articles at one and the same time constitutes but one offense although such articles belong to several different owners. (See Wharton's Criminal Law (vol. 2) § 1171, p. 1489; *State* v. *Sampson*, 157 Iowa 257 [138 N.W. 473, 42 L.R.A.N.S. 967], and exhaustive note.)

▮ In the instant case, the evidence showed that defendant received the stolen goods, specified in counts 2, 4 and 5, in a single transaction at the time and place mentioned, and, in our opinion, such evidence proved but a single offense under section 496 of the Penal Code. While a single judgment based on any one of the three counts above-mentioned can be sustained, the several judgments cannot be permitted to stand.

For the reasons stated, the judgment based upon count 2 is affirmed and the judgments based upon counts 4 and 5 are reversed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.