Filed 4/20/16

<u>**CERTIFIED FOR PARTIAL PUBLICATION**</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>MARC LYNDS REID II,<br><br>     Defendant and Appellant. | F069533<br><br>(Super. Ct. No. CRM028533B)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Merced County.  Mark V. Bacciarini, Judge.

William C. Whaley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

---

\*      Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts III. and IV.

Defendant Marc Lynds Reid II challenges his multiple felony convictions arising from his theft of nine metal urns containing the cremated remains of 11 people. Defendant was charged in an amended information with 23 felonies: 11 counts of removal of human remains from the place of interment in violation of Health and Safety Code[1] section 7052, subdivision (a) (counts 1 through 11); 11 counts of grand theft in violation of Penal Code section 487, subdivision (a) (counts 12 through 22); and one count of vandalism in violation of Penal Code section 594, subdivision (b)(1) (count 23). The amended information further alleged that defendant suffered four prison priors pursuant to Penal Code section 667.5, subdivision (b), and a prior serious felony pursuant to the three strikes law (Pen. Code, §§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)).

A jury convicted defendant of all 23 counts, and defendant then admitted the four prison priors and the strike conviction. The trial court sentenced defendant to three years (upper term) on count 1, doubled to six years for the strike; ten 16-month terms for counts 2 through 11 (one-third of middle term, doubled); a 16-month term for the vandalism (count 23); and one-year terms for each of the four prison priors, for a determinate term of 24 years 8 months. Defendant was sentenced on the grand theft counts and the sentences were stayed pursuant to Penal Code section 654, subdivision (a).

On appeal, as to his convictions for removing human remains from the place of interment (counts 1 through 11), defendant argues (1) conviction on more than one count was improper as a matter of law because the removals were pursuant to one intention, one general impulse, and one plan; (2) the statute is ambiguous and the rule of lenity requires reversal of 10 of the 11 counts; and (3) punishing him for multiple counts violates the double jeopardy clause of the Fifth Amendment of the United States Constitution. As to his convictions for grand theft (counts 12 through 22), defendant argues (1) conviction on

---

[1]     All further statutory references are to the Health and Safety Code unless otherwise indicated.

2.

more than one count was improper as a matter of law because the thefts were pursuant to one intention, one general impulse, and one plan; and (2) there was insufficient evidence to support two of the 11 counts because only nine urns were stolen. Defendant also argues the trial court erred under Penal Code section 654 when it punished him for both removing human remains and vandalism. Finally, defendant argues the trial court erred in denying his *Pitchess* motion.[2]

We affirm the judgment on the removal of human remains counts, reverse the judgment on two of the 11 grand theft counts, affirm the judgment on nine counts of grand theft, and stay the sentence for the vandalism count. We also find the trial court erred in denying the *Pitchess* motion and conditionally reverse so the trial court can conduct an in camera review.

## FACTUAL SUMMARY

Sometime during the night of May 7, 2013, or the early morning hours of May 8, 2013, defendant entered a semi-open mausoleum building at the Evergreen Funeral Home at Memorial Park in Merced. He broke into nine urn niches located in one of the mausoleum walls by smashing the glass panes enclosing each niche. Defendant then removed nine metal urns, each weighing approximately 25 pounds and collectively containing the cremated remains of 11 people.[3] After removing the urns from the mausoleum, defendant stashed them outside. Between approximately 4:00 a.m. and 5:00 a.m. on May 8, 2013, defendant returned to the cemetery area in a van driven by an accomplice and he loaded the urns into the van. The urns were later broken down into scrap metal for recycling and the cremated remains of the 11 deceased were discarded.

---

**2**     *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

**3**     Three of the nine urns were double urns intended to hold the remains of two people and, of those three, two contained two sets of remains and one contained one set of remains.

Defendant was arrested for the crimes months later after a friend of his went to the cemetery in July 2013 and informed staff they should "'check into'" defendant regarding the missing urns. Neither the urns nor the cremated remains were recovered.

## DICUSSION

## I. Removal of Human Remains from Place of Interment

### A. Extension of *Bailey*[4] Rule to Removal of Human Remains

Section 7052, subdivision (a), provides, "Every person who willfully … disinters [or] removes from the place of interment … any remains known to be human, without authority of law, is guilty of a felony." In what appears to be an issue of first impression, defendant argues on appeal that pursuant to the holdings articulated in *People v. Smith* (1945) 26 Cal.2d 854 (*Smith*) and *Bailey*, *supra*, 55 Cal.2d 514, he cannot be convicted of more than one count of removing human remains from the place of interment because the removal was "one-occasion one-offense" under *Smith* and "one-plan one-offense" under *Bailey*. Although he concedes the lack of authority for his position, defendant contends that extension of these rules is appropriate as a matter of law given "the offense of removing human remains is essentially larceny of a particular type of property—human remains."

The *Smith* case involved receipt of stolen property, in the form of automobile radios. (*Smith*, *supra*, 26 Cal.2d at pp. 855–856.) In articulating the rule that receipt of stolen goods in a single transaction is a single offense, regardless of whether the goods were stolen from multiple victims, the California Supreme Court reasoned: "The gist of the offense is the purchase or receipt of the stolen goods with guilty knowledge but the particular ownership of the goods is not an element of the crime. Neither the legal nor moral character of the act is affected in any way by the fact that the stolen property may have belonged to several persons rather than to a single person." (*Id.* at p. 859.)

---

[4] *People v. Bailey* (1961) 55 Cal.2d 514 (*Bailey*).

The subsequent decision in *Bailey* arose out of the defendant's conviction for grand theft based on the unlawful taking of welfare benefits from the county over a period of approximately 17 months. (*Bailey*, *supra*, 55 Cal.2d at pp. 515–516.) The sum received each month by the defendant constituted petty theft but if aggregated, the sums amounted to grand theft. (*Id.* at p. 518.) The California Supreme Court held the jury was properly instructed that the sums could be aggregated, and it articulated the test for "determining if there were separate offenses or one offense [as] whether the evidence discloses one general intent or separate and distinct intents." (*Id.* at p. 519.) It explained that "[w]hether a series of wrongful acts constitutes a single offense or multiple offenses depends upon the facts of each case, and a defendant may be properly convicted upon separate counts charging grand theft from the same person if the evidence shows that the offenses are separate and distinct and were not committed pursuant to one intention, one general impulse, and one plan. [Citation.]" (*Ibid.*)

The *Smith* and *Bailey* cases articulated the same general principle regarding a single offense or transaction versus multiple offenses or transactions, but *Smith* applied it to the receipt of stolen property while *Bailey* applied it to theft. (*Smith*, *supra*, 26 Cal.2d at pp. 858–859; *Bailey*, *supra*, 55 Cal.2d at p. 519.) The two crimes are "separate and distinct." (*Smith*, *supra*, at p. 859.) Given the nature of defendant's crimes, to the extent one of these rules is subject to extension by analogy to the removal of human remains, it is the *Bailey* theft rule. It is therefore unnecessary to address further defendant's separate argument regarding extension of *Smith*.

We are not persuaded *Bailey* should be extended. First, human remains have not been treated as property under the law, and we reject defendant's characterization of them as such. (*Spates v. Dameron Hospital Assn.* (2003) 114 Cal.App.4th 208, 221; *Enos v. Snyder* (1900) 131 Cal. 68, 69.) While "courts have recognized that next of kin have a temporary, *quasi-property* right in the body of a deceased for purposes of burial or other disposition," that limited category has no application to the crime committed by

5.

defendant.  (*Spates v. Dameron Hospital Assn.*, *supra*, at p. 221; *O'Donnell v. Slack* (1899) 123 Cal. 285, 289.)

Nor is the removal of human remains from their places of interment morally akin to property crimes such as receiving stolen automobile radios or stealing welfare benefits. Section 7052 was enacted to address the specific common law crime of "'body-snatching'" (*People v. Baumgartner* (1901) 135 Cal. 72, 74), and such "statutes governing the disposition of human remains exist not only to ensure removal of dead bodies and protect public health, but also to prevent invasion of the religious, moral, and esthetic sensibilities of the survivors" (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 893).  Courts have long recognized the dignity and respect society affords the dead and their survivors.  (*See id.* at pp. 893–894, 896–898 [discussing policy of recognizing dignified, respectful treatment of the dead]; *Walsh v. Caidin* (1991) 232 Cal.App.3d 159, 164 [recognizing case law is sensitive to outrage of survivors]; *People v. Vick* (1970) 11 Cal.App.3d 1058, 1064–1065 [recognizing societal respect extended to the dead and their families]; *People v. Baumgartner*, *supra*, at p. 74 [describing act of breaking into coffin and searching the deceased for money as "highly reprehensible"]; *O'Donnell v. Slack*, *supra*, 123 Cal. at p. 289 [duty toward dead "'imposed by the universal feelings of mankind'"].)

In this case, the cremated remains of 11 people are irretrievably gone, willfully removed from their places of interment, and then discarded by defendant so he could recycle the metal urns in which they were laid to rest for scrap value.[5]  The crime proscribed by section 7052—abuse of the dead—is not analogous to larceny.  Moreover, crimes against remains of the dead have attendant public health and moral concerns not

---

[5]     The urns had plaques bearing the names of the individuals inurned therein and no reasonable individual would have been confused or misled regarding what the urns contained or how many people were interred therein.  Defendant does not contend otherwise.

6.

presented by crimes of larceny.[6]  We therefore reject defendant's argument that the *Bailey* rule is subject to extension as matter of law to the removal of human remains from their place of interment.

### B.     Rule of Lenity

Defendant next argues that the rule of lenity prohibits his multiple convictions for willfully removing human remains because the word "any" in the statute is ambiguous. (§ 7052, subd. (a).)  The gist of defendant's argument is that because the word "any" can be singular or plural, the statute is ambiguous as to the unit of prosecution, and the Legislature could have but did not choose the word "each."

"The rules governing statutory construction are well settled.  We begin with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent.  [Citations.]  To determine legislative intent, we turn first[] to the words of the statute, giving them their usual and ordinary meaning.  [Citations.]  When the language of a statute is clear, we need go no further.  However, when the language is susceptible of more than one reasonable interpretation, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.  [Citations.]"  (*People v. Flores* (2003) 30 Cal.4th 1059, 1063.)

"[T]he 'touchstone' of the rule of lenity 'is statutory ambiguity.'  [Citation.]" (*Bifulco v. United States* (1980) 447 U.S. 381, 387.)  "'The rule … applies only if the court can do no more than guess what the legislative body intended; there must be an

---

**6**      Codefendant Richard Madsen and defendant's friend, Crystal Febbie, both testified as to the moral repugnance of the crime.  Ms. Febbie also testified her deceased child's cremated remains had been inurned in a brass heart-shaped urn that was stolen, and the theft still caused her emotional pain.  It was these feelings regarding the repugnant nature of the crime that eventually led Ms. Febbie to visit the cemetery and tell staff to "'check into'" defendant.  This testimony clearly underscores the collective societal view regarding respectful treatment of the dead and sensitivity toward their survivors.

egregious ambiguity and uncertainty to justify invoking the rule.'" (*People v. Avery* (2002) 27 Cal.4th 49, 58.) "Where [the Legislature] has manifested its intention, [courts] may not manufacture ambiguity in order to defeat that intent." (*Bifulco v. United States*, *supra*, at p. 387.) Additionally, "ambiguities are not interpreted in the defendant's favor if such an interpretation would provide an absurd result, or a result inconsistent with apparent legislative intent. [Citation.]" (*People v. Cruz* (1996) 13 Cal.4th 764, 783.)

In this case, we do not agree that the word "any" within the meaning of section 7052 is ambiguous.[7] While the meaning of "'any'" is expansive (*United States v. Gonzales* (1997) 520 U.S. 1, 5), it must be viewed in the linguistic and statutory contexts rather than in isolation (*Yates v. United States* (2015) __ U.S. __, __ [135 S.Ct. 1074, 1081–1082]). In relevant part, the statute provides: "Every person who willfully … removes from the place of interment … *any* remains known to be human, without authority of law, is guilty of a felony." (§ 7052, sub. (a), italics added.) The word "any" modifies "remains," and "'remains'" or "'[h]uman remains'" is defined as "the body of a deceased person, regardless of its stage of decomposition, and cremated remains." (§ 7001.) The term "'[c]remated remains,'" in turn, is defined as "the ashes and bone fragments of a human body that are left after cremation in a crematory, and includes ashes from the cremation container." (§ 7002.)

Thus, under the statute's plain language, it is a felony to remove the cremated remains of a human body from its place of interment. In this case, 11 bodies were cremated, inurned in metal urns, and interred in urn niches.[8] Given the absence of

---

[7] Defendant's reliance on *People v. Rowland* (1999) 75 Cal.App.4th 61 and *People v. Kirk* (1989) 211 Cal.App.3d 58 is misplaced. Those cases involved possession statutes. Section 7052 is distinguishable in that it is directed not at unlawful possession but at unlawfully disturbing human remains, be it through mutilation, disinterment, removal of remains from the place of interment, or sexual contact with remains. (§ 7052, subd. (a).)

[8] "'Interment' means the disposition of human remains by entombment or burial in a cemetery or, in the case of cremated remains, by inurnment, placement or burial in a cemetery, or

statutory ambiguity, defendant's attempt to invoke the rule of lenity is rejected. Even if we were to assume the statute is ambiguous regarding the word "any," however, the ambiguity is not "egregious" and does not justify invocation of the rule. (*People v. Boyce* (2014) 59 Cal.4th 672, 695.) A contrary reading of the statute that the word "any" is always ambiguous, as urged by defendant, would indeed lead to "an absurd result." (*People v. Cruz*, *supra*, 13 Cal.4th at p. 783.)

### C. Double Jeopardy

"The Double Jeopardy Clause 'protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.' [Citation.]" (*Brown v. Ohio* (1977) 432 U.S. 161, 165.) Relying on the third category, defendant argues that multiple punishments for a single count of removing human remains violates the double jeopardy clause of the Fifth Amendment.

We have rejected defendant's argument that the removal of 11 sets of human remains results in only a single felony conviction. Defendant's argument that he was punished 11 times for a single count is also rejected.

## II. Grand Theft of Urns

### A. Insufficient Evidence as to Two Counts

Preliminarily, defendant challenges his conviction for 11 rather than nine counts of grand theft. He contends, and respondent agrees, that because only nine metal urns were stolen and the People did not introduce evidence the human remains had any value, there is insufficient evidence to support more than nine counts of grand theft.[9]

We agree that the conviction of two counts of grand theft must be vacated.

---

burial at sea as provided in Section 7117" (§ 7009), and "'[i]nurnment' means placing cremated remains in a cremated remains container suitable for placement, burial, or shipment" (§ 7011).

[9] A cemetery employee valued each urn between $1,500 and $2,000, and the parties stipulated the thefts were grand thefts as a matter of law.

### B.    Application of *Bailey* Rule to Urn Thefts

Defendant next argues the *Bailey* rule also applies to his theft convictions and only one conviction is proper as a matter of law given the thefts occurred "on the same occasion pursuant to the same plan." Respondent argues the *Bailey* rule does not apply to cases involving multiple theft victims.

We apply the *Bailey* rule "as a matter of law only in the absence of any evidence from which the jury could have reasonably inferred that the defendant acted pursuant to more than one intention, one general impulse, or one plan. [Citation.]" (*People v. Jaska* (2011) 194 Cal.App.4th 971, 984, fn. omitted.) We are not persuaded it applies as a matter of law to these facts.

In *People v. Whitmer* (2014) 59 Cal.4th 733 (*Whitmer*), the California Supreme Court revisited the *Bailey* rule given the conflicting and broad interpretations of the rule by the Courts of Appeal. *Whitmer* involved the manager of a motorcycle dealership (the defendant) who fraudulently sold 20 different vehicles, costing the dealership more than $250,000. (*Whitmer*, *supra*, at p. 735.) He was convicted of 20 counts of grand theft, one for each vehicle, and he argued on appeal that he could only be convicted of one count of grand theft under the *Bailey* rule. (*Whitmer*, *supra*, at pp. 735–736.) The Court of Appeal disagreed and affirmed the convictions but, in doing so, urged the Supreme Court to revisit *Bailey*. (*Whitmer*, *supra*, at p. 736.) The Supreme Court did so and, concluding *Bailey* had been misinterpreted in a long line of cases, clarified that "a defendant may be convicted of multiple counts of grand theft based on separate and distinct acts of theft, even if committed pursuant to a single overarching scheme" and it disapproved any inconsistent interpretation. (*Whitmer*, *supra*, at p. 741.) However, given the line of Court of Appeal cases "consistently [holding] that multiple acts of grand theft pursuant to a single scheme cannot support more than one count of grand theft," the court concluded that its holding was "an unforeseeable judicial enlargement of criminal liability for multiple grand thefts." (*Id.* at p. 742.) As a result, the *Bailey* rule as clarified

10.

by *Whitmer* did not apply retroactively to the defendant, and he could not be convicted of more than one count of grand theft. (*Whitmer*, *supra*, at p. 742.) Although we conclude *Bailey* does not apply here, we agree with the parties that our decision must necessarily be based on the law prior to *Whitmer*.

*Bailey* involved multiple thefts from a single victim, as did *Whitmer*. (*Whitmer*, *supra*, 59 Cal.4th at p. 735; *Bailey*, *supra*, 55 Cal.2d at p. 515.) We previously considered application of the *Bailey* rule in a case involving vandalism to the property of multiple victims during a one-night tagging spree. (*In re David D.* (1997) 52 Cal.App.4th 304 (*David D.*) We considered whether to extend the *Bailey* rule, which had generally been applied to theft cases, to vandalism. (*David D.*, *supra*, at p. 309.) The issue was not expressly resolved because we determined that assuming the *Bailey* rule would apply in vandalism cases, it did not apply where "each tagging incident clearly represent[ed] a separate offense affecting a different victim."[10] (*David D.*, *supra*, at p. 311.) We recognized the rule had been generally limited "to thefts involving a single victim." (*Id.* at p. 309, fn. omitted.) We found only two cases in 35 years in which *Bailey* had been applied to thefts from multiple victims, and we noted those two cases were "articulately criticized" in *People v. Garcia* (1990) 224 Cal.App.3d 297, 308–309, on the ground they "cited *Bailey* to prohibit *multiple punishments* for a *single offense* committed incrementally," which was "not the essence of the *Bailey* doctrine."[11] (*David D.*, *supra*, at p. 310.) We noted that *Bailey* itself "presupposes a single victim" and "one limitation of the *Bailey* doctrine is its inapplicability to offenses involving multiple victims." (*David D.*, *supra*, at pp. 309–310.)

---

**10**     The *Bailey* rule was subsequently explicitly extended to vandalism cases in *People v. Carrasco* (2012) 209 Cal.App.4th 715, 719–720 (*Carrasco*) and *In re Arthur V.* (2008) 166 Cal.App.4th 61, 67 (*Arthur V.*).

**11**     The cases applying *Bailey* to multiple victims were *People v. Brooks* (1985) 166 Cal.App.3d 24 and *People v. Columbia Research Corp.* (1980) 103 Cal.App.3d Supp. 33.

Our decision in *David D.* was also influenced by *People v. Church*, in which a defendant challenged his multiple theft convictions arising out of thefts from four separate offices within the same building. (*People v. Church* (1989) 215 Cal.App.3d 1151, 1158–1159 (*Church*), disapproved on other grounds in *People v. Bouzas* (1991) 53 Cal.3d 467, 477–480.) In *Church*, the court found the evidence supported the prosecution's theory that "the entries into and thefts from the four separately leased and locked offices amounted to crimes against four separate interests and therefore represented separate offenses." (*Church*, *supra*, at p. 1159.) The court reasoned that "[f]our separate businesses were forcibly entered and ransacked" and "[a]lthough the crimes were committed in a single episode, they represented separate intrusions into the privacy of separate victims and were validly chargeable as distinct offenses." (*Ibid.*)

Defendant argues that to the extent a multiple victims exception to the *Bailey* rule was recognized, it was later rejected in *Carrasco*, *supra*, 209 Cal.App.4th 715 and *Arthur V.*, *supra*, 166 Cal.App.4th 61. We are not persuaded that is so. While the *Bailey* rule was applied in *Carrasco* to aggregate vandalism damages, the case involved two successive acts of vandalism arising out of a juvenile's anger at his mother. One act was directed at the car she owned and the other was directed at the house she was residing in. Although there were multiple victims by virtue of the fact the home was owned by the juvenile's father, the circumstances are more analogous to those involving a single victim because the juvenile's mother was residing in the house. As the court noted, the juvenile's acts of vandalism resulted from "a single angry impulse directed toward his mother[] …." (*Carrasco*, *supra*, at p. 717.)

The other case cited by defendant, *Arthur V.*, is inapposite. The case involved damage to a windshield and a cellphone screen during the same incident, and the car and the phone were both owned by the same victim. Although the court extended *Bailey* to vandalism cases in *Arthur V.*, its determination did not turn on a single victim versus

multiple victims distinction, and we find the facts of that case neither remarkable nor analogous to the facts in this case.

As in *David D.*, resolution of the issue in this case does not require articulation of an absolute rule regarding *Bailey* and a single victim versus multiple victims. (*David D.*, *supra*, 52 Cal.App.4th at p. 309, fn. 3.) Rather, application of the *Bailey* rule requires consideration of the facts unique to each case. (*Bailey*, *supra*, 55 Cal.2d at p. 519.) The prior decisions in *David D.* and *Church* are the most instructive here, as they involved crimes against multiple victims that occurred during a single crime spree. Although the nine urns were stolen from the mausoleum during a single crime spree, each urn was contained in a separate niche covered by its own pane of glass. Each urn was heavy and required both hands to lift and carry it, with the double urns being sufficiently heavy to require being "walk[ed]" along the floor. As a result, the theft required defendant to break each pane of glass and remove each urn individually. Each urn then had to be moved out of the building and stashed one at a time. Additionally, the urns were purchased separately and were the property of separate victims, a fact that was apparent given the separate niches and the metal identification plaques on the urns.[12]

Thus, the thefts constituted "crimes against [nine] separate interests and therefore represented [nine] separate offenses."[13] (*Church*, *supra*, 215 Cal.App.3d at p. 1159.)

---

[12]  Defendant's argument that there was insufficient evidence on this point was raised for the first time in his reply brief and is rejected in any event. The People introduced evidence as to the purchase of each niche and urn, without objection, and that evidence was sufficient to establish separate ownership.

[13]  This conclusion draws further support from the California Supreme Court's recent decision in *People v. Garcia* (2016) 62 Cal.4th 1116, 1119–1120, a case in which the defendant challenged his two burglary convictions based on his entry into a store to commit robbery followed by his entry into the store's bathroom to commit rape. The court held "the evidence of the bathroom's location and characteristics is insufficient to show that it provided to its occupants a separate and reasonable expectation of protection from intrusion and danger, beyond that provided by the shop itself." (*Id.* at p. 1120.) In reaching its conclusion, the court addressed with approval numerous cases, including *Church*, that, on their facts, supported multiple burglary convictions. (*People v. Garcia*, *supra*, at pp. 1127–1128.) The court recognized, as a common

13.

Accordingly, we reject defendant's argument that the *Bailey* rule applies as a matter of law and requires reversal of all but one of his grand theft convictions.

Judgment is affirmed as to nine counts of grand theft.

## III.   Sentence for Vandalism Count[*]

Defendant also argues that Penal Code section 654, subdivision (a), prohibits his separate punishment for vandalism because both the vandalism and the removal of human remains arose from the same underlying act.  Respondent agrees.

We accept the concession.  "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  (Pen. Code, § 654, subd. (a).)  The statutory purpose "is to ensure that a defendant's punishment will be commensurate with his culpability."  (*People v. Correa* (2012) 54 Cal.4th 331, 341.)  Here, the vandalism count arose out of defendant's action in breaking the glass sealing the urn niches and damaging the rosettes in the process, a course of conduct that preceded, and was necessary to, defendant's removal of the urns containing the human remains.  The trial court, therefore, erred in punishing defendant twice for the same act and the vandalism sentence is ordered stayed pursuant to section 654.  (*People v. Jones* (2012) 54 Cal.4th 350, 354.)

## IV.   Denial of *Pitchess* Motion[*]

Following the preliminary hearing, defendant filed a *Pitchess* motion seeking review of Detective Paul Johnson's personnel records.  (*Pitchess*, *supra*, 11 Cal.3d 531.)

---

thread, that "the invaded rooms had characteristics that a reasonable person would understand to signify a separate possessory interest or a heightened degree of protection against significant intrusions from outsiders."  (*Id.* at p. 1128.)  For the reasons we have articulated, that common thread is echoed here as well, where the theft of each urn from its niche invaded a separate owner's interest.  (*Ibid.*)

[*]      See footnote, *ante*, page 1.

[*]      See footnote, *ante*, page 1.

The trial court summarily denied the motion. On appeal, defendant argues his motion satisfied the threshold showing of good cause for discovery and he requests the case be remanded to the trial court for an in camera review of Johnson's personnel records. Respondent does not dispute that good cause existed to conduct an in camera review, but argues remand is unnecessary because the error is harmless.

We review the trial court's ruling under the abuse of discretion standard. (*People v. Cruz* (2008) 44 Cal.4th 636, 670.)

"[O]n a showing of good cause, a criminal defendant is entitled to discovery of relevant documents or information in confidential personnel records of a peace officer accused of misconduct against the defendant. [Citation.]" (*People v. Gaines* (2009) 46 Cal.4th 172, 179 (*Gaines*).) To show good cause, a defendant must demonstrate "both '"materiality" to the subject matter of the pending litigation and a "reasonable belief" that the agency has the type of information sought.' [Citation.]" (*Ibid.*) This threshold requirement is "'relatively low.'" (*People v. Samuels* (2005) 36 Cal.4th 96, 109.) "[A] defendant need demonstrate only 'a logical link between the defense proposed and the pending charge' and describe with some specificity 'how the discovery being sought would support such a defense or how it would impeach the officer's version of events.' [Citation.]" (*Gaines*, *supra*, at p. 182.) If a defendant shows good cause, the trial court is required to conduct an in camera review of the records and disclose any relevant information. (*Id.* at p. 179.) "[W]hen a trial court has failed to review the *Pitchess* documents at all, it is appropriate to remand the case to permit the trial court to review the requested documents in chambers and to issue a discovery order, if warranted." (*Id.* at pp. 180–181, fn. omitted.)

Defendant sought an in camera review of Detective Johnson's personnel records following testimony at the preliminary hearing regarding Johnson's coercion of witness Jason Baker. Baker had inculpated defendant during an interview with Johnson but, during the preliminary hearing, he testified he was coerced into doing so by Johnson.

15.

Johnson was the primary investigator assigned to defendant's case and defendant sought discovery of any records pertaining to Johnson's coercion, intimidation, or attempt to influence any party to any investigation.

There is no dispute between the parties regarding defendant's showing of good cause for the discovery sought, and we agree defendant met "[t]he relatively low threshold." (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 94.) The trial court was therefore required to conduct an in camera review to determine whether any information in Detective Johnson's personnel records was subject to disclosure. (*Gaines*, *supra*, 46 Cal.4th at pp. 180–181.) Respondent's argument that no relief is warranted because there was no prejudicial error is premature. (*Id.* at p. 181.) The trial court's determination regarding disclosure "is *not* akin to the inquiry into whether a particular error in denying discovery was prejudicial" and a defendant is entitled to disclosure of relevant information, "even in the absence of any judicial determination that the potential defense is credible or persuasive." (*Id.* at p. 182.) On remand, the trial court may determine there is no relevant information to disclose or it may determine disclosure of some information is warranted. However, defendant is entitled to that determination in the first instance and, pursuant to the procedure articulated in *Gaines*, judgment must be conditionally reversed so the trial court can conduct an in camera review of the records and determine whether there is any information subject to disclosure. (*Gaines*, *supra*, at pp. 180–181; Evid. Code, § 1045.)

## DISPOSITION

Convictions on two of the 11 counts of grand theft are vacated, and judgment on the remaining nine counts of grand theft is affirmed. The sentence on the vandalism count is stayed. The trial court is directed to amend the abstract of judgment in accordance with the foregoing and forward it to the appropriate authorities.

16.

The judgment is conditionally reversed and remanded to the trial court to conduct an in camera review of Detective Johnson's personnel records pursuant to the procedure in *Gaines*, *supra*, 46 Cal.4th 172, and to order the disclosure of any relevant information. If there is no discoverable information, the trial court shall reinstate the judgment and sentence.

_____
KANE, Acting P.J.

WE CONCUR:


_____
POOCHIGIAN, J.


_____
FRANSON, J.