[No. C001376. Third Dist. May 31, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
LARRY WILBUR KIRK, Defendant and Appellant.

COUNSEL

Ernest Krause, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, James T. McNally and Wanda Hill Rouzan, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**SIMS, J.**—Did defendant's possession at the same time and place of two sawed-off shotguns constitute two separate violations of former Penal Code section 12020, subdivision (a)? We hold it did not, so that one of defendant's two convictions of that offense must be reversed. (All further statutory references to sections of an undesignated code are to the Penal Code.)

A jury convicted defendant Larry Wilbur Kirk of first degree burglary as charged in counts I and II of the information (§§ 459, 460), illegal possession of a sawed-off shotgun as charged in count III (former § 12020, subd. (a)), and illegal possession of a "sawed-off rifle" as charged in count IV (former § 12020, subd. (a)). Defendant admitted allegations that he had suffered two prior serious felony convictions (§ 667, subd. (a)). Sentenced to

state prison for an unstayed term of 18 years and 8 months, defendant appeals.

The convictions were based upon the following facts: On July 15, 1985, the Lynn residence was burglarized. Among the items taken was a Browning rifle. Defendant's fingerprint was discovered on the exterior window through which the burglar had entered the residence.

On the following day, July 16, the Aitken residence was burglarized. Among the items taken were a Remington shotgun and jewelry. Within a few hours of the burglary defendant pawned some of the stolen jewelry.

On July 21 police officers were dispatched to the scene of a fight in progress in which gunshots reportedly had been fired. Through the window of an apartment the officers observed defendant inside. They entered and found a sawed-off shotgun on the living room couch and a sawed-off rifle in a closet in the bedroom.

The victim Aitken identified the shotgun as the one stolen from his residence in the July 16 burglary. The victim Lynn identified the rifle as the one stolen from his residence in the July 15 burglary. However, both weapons had been altered to their illegal configurations *after* they had been stolen.

### DISCUSSION

When defendant committed his crimes in 1985, subdivision (a) of section 12020 provided: "Any person . . . who . . . possesses . . . *any* instrument or weapon of the kind commonly known as a . . . sawed-off shotgun . . . is guilty of a felony, . . ." (Stats. 1984, ch. 1414, § 3, pp. 4972-4973, italics added; Stats. 1984, ch. 1562, § 1.1, p. 5499.)[1] Subdivision (d)(1) of section 12020 then defined "sawed-off shotgun" as "any firearm (including any revolver) manufactured, designed, or converted *to fire shotgun ammunition* having a barrel or barrels of less than 18 inches in length, or a rifle having a barrel or barrels of less than 16 inches in length, or any weapon made from a rifle or shotgun (whether by manufacture, alteration, modification, or otherwise) if such weapon as modified has an overall length of less than 26 inches."[2] (*Id.* at ch. 1414, § 3, p. 4974.)

---

[1] As amended in 1988, subdivision (a) of section 12020 provides in pertinent part, "Any person . . . who . . . possesses . . . any short-barreled shotgun, any short-barreled rifle . . . is guilty of a felony . . . ." (Stats. 1988, ch. 1269.)

[2] Further references to former section 12020 are to the statute as it existed at the time of defendant's crimes.

■ The principal question is whether defendant can be convicted of two violations of former section 12020 where he possessed two sawed-off shotguns at the same time and place. At the outset, we shall make sure the stage is properly set for resolution of the question by clearing away some distracting scenery.

First, there is no possibility the two convictions were appropriate on the ground different weapons—a sawed-off shotgun and a sawed-off rifle—were found. Former section 12020 makes no distinction between rifles and shotguns so long as they are of the illegal dimensions fixed by the statute. Under subdivision (d)(1) of former section 12020, a sawed-off rifle is a sawed-off shotgun. Therefore, multiple convictions cannot be sustained by drawing an analogy to cases that have upheld multiple convictions for possession of different *kinds* of illegal narcotics. (See *In re Adams* (1975) 14 Cal.3d 629, 635 [122 Cal.Rptr. 73, 536 P.2d 473] and authorities cited; *In re Hayes* (1969) 70 Cal.2d 604, 606 [75 Cal.Rptr. 790, 451 P.2d 430], and authorities cited.) Rather, the question is whether defendant can be twice convicted for possessing two of the same kind of illegal item. (See, e.g., *In re Adams, supra,* 14 Cal.3d at p. 635.)

Second, there is no possibility the two convictions could be justified on the theory defendant possessed the two weapons at different places or times. The information charged defendant with possessing the weapons on July 21, 1985. Although the weapons were taken in the precedent burglaries, the evidence shows without dispute the weapons had not then been sawed off. Thus, the only evidence of possession of illegal weapons was that they were located in two rooms of defendant's residence on July 21, as alleged in the information. The cases have recognized that where illegal goods are kept at the same time in a residence, there is but a single possession of the goods. (See, e.g., *People* v. *Harris* (1977) 71 Cal.App.3d 959, 962, 969-970 [139 Cal.Rptr. 778] [various unlawful items seized in a residence]; *People* v. *Puppilo* (1929) 100 Cal.App. 559, 561-562 [280 P. 545] [one illegal weapon found in front room, while another found in bedroom].)

Third, contrary to the People's suggestion, multiple convictions in this case are not justified by *People* v. *Wasley* (1966) 245 Cal.App.2d 383 [53 Cal.Rptr. 877]. There, a pistol was found under the front seat on the passenger's side of defendant's vehicle and a sawed-off shotgun was found on the rear seat. (P. 386.) Defendant was convicted of violation of former section 12020 for possessing the sawed-off shotgun and of violation of former section 12021 for being a convicted felon in possession of the pistol. (P. 385.) Upholding the two convictions, the court of appeal noted the two statutes served different public purposes. (P. 386.) *Wasley* is not controlling here

because only a single statute with a singular public purpose has been violated.

We are aware that numerous cases have held that a defendant is subject to only a single conviction when he possesses more than one unlawful item of the same kind at the same time and place. (*People* v. *Harris, supra,* 71 Cal.App.3d at pp. 969-970 [contemporaneous possession of various items of property with obliterated serial numbers constituted only one crime]; *People* v. *Schroeder* (1968) 264 Cal.App.2d 217, 228-229 [70 Cal.Rptr. 491] [contemporaneous possession of various packets of the same kind of narcotics constituted one crime]; *People* v. *Theobald* (1964) 231 Cal.App.2d 351, 353 [41 Cal.Rptr. 758] [same]; *People* v. *Puppilo, supra,* 100 Cal.App. at pp. 562-566 [contemporaneous possession of two unlawful weapons constituted single offense]; see also *People* v. *Lyons* (1958) 50 Cal.2d 245, 275 [324 P.2d 556] [contemporaneous receipt of two items of stolen property constituted single offense]; *People* v. *Smith* (1945) 26 Cal.2d 854, 859 [161 P.2d 941] [same].)

However, these cases were decided under different statutes from the one at issue here. We therefore think the question becomes one of statutory construction. We have no doubt the Legislature could, if it wanted to, make criminal and subject to separate punishment the possession of each and every sawed-off shotgun found at the same time and place. (See *Bell* v. *United States* (1954) 349 U.S. 81, 82-83 [99 L.Ed. 905, 910, 75 S.Ct. 620].) The question is whether it did so by outlawing the possession of "*any* instrument or weapon of the kind commonly known as a . . . sawed-off shotgun, . . ." (Former § 12020, subd. (a), italics added.)

As used in criminal statutes, the word "any" has long been construed as ambiguously indicating the singular or the plural.

Thus, in *Bell* v. *United States, supra,* 349 U.S. 81 [99 L.Ed. 905], defendant was convicted of two violations of the Mann Act for transporting two women across state lines in the same vehicle on the same trip. (349 U.S. at p. 82 [99 L.Ed. at pp. 909-910].) The Mann Act provided in relevant part: "Whoever knowingly transports in interstate or foreign commerce . . . any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose [shall be subject to fine or imprisonment]." (*Ibid.*)

Reversing the multiple convictions in an opinion by Justice Frankfurter, the high court said, "When Congress has the will it has no difficulty in expressing it—when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit. When Congress leaves to the Judiciary the

task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. And this not out of any sentimental consideration, or for want of sympathy with the purpose of Congress in proscribing evil or antisocial conduct. It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment. This in no wise implies that language used in criminal statutes should not be read with the saving grace of common sense with which other enactments, not cast in technical language, are to be read. Nor does it assume that offenders against the law carefully read the penal code before they embark on crime. It merely means that if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses, . . ." (349 U.S. at pp. 83-84 [99 L.Ed. at pp. 910-911].)

In this case, we need not and do not decide whether *Bell* requires us to construe former section 12020 in defendant's favor as a matter of federal due process of law. (But see *Dunn* v. *United States* (1979) 442 U.S. 100, 112 [60 L.Ed.2d 743, 754, 99 S.Ct. 2190]; *People* v. *Gutierrez* (1982) 132 Cal.App.3d 281, 284 [183 Cal.Rptr. 31].) For present purposes, we need only conclude, as we shall, that *Bell* and its federal progeny (discussed below) are persuasive authority on the question whether the Legislature's use of "any" is ambiguous. (See, e.g., *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 298 [250 Cal.Rptr. 116, 758 P.2d 58].)

As we have intimated, the federal circuit courts have often followed *Bell* to prohibit conviction for more than one offense where a defendant simultaneously possesses or receives several weapons in violation of federal gun-control statutes prohibiting the possession or receipt of "any" firearm.

Thus, in *United States* v. *Kinsley* (8th Cir. 1975) 518 F.2d 665, the defendants, convicted felons, were found in possession of four firearms at a single time and place. They were convicted of four counts of violation of 18 United States Code section 1202(a)(1), which provided that "Any person who . . . has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony . . . and who . . . possesses . . . *any firearm* shall be fined not more than $10,000 or imprisoned for not more than two years, or both." (Italics added.) The district court imposed consecutive sentences. (*Id.* at p. 666.)

On appeal the court considered "whether the language of § 1202(a)(1), defining as a criminal offense the . . . possession . . . by a previously convicted felon of 'any firearm,' allows the government to treat each of several firearms simultaneously possessed as a separate unit of prosecution." (518 F.2d at p. 666.)

In construing the statutory language the court observed it "is similar to that deemed ambiguous in *Bell*: as the statute in *Bell* defined the object of the offense as 'any woman or girl,' § 1202(a) defines the object of the offense as 'any firearm.'" (518 F.2d at p. 668.) The court explained that "in many of the cases in which the courts have found a *Bell*-type ambiguity, the object of the offense has been prefaced by the word 'any.' Seemingly this is because 'any' may be said to fully encompass (i.e., not necessarily exclude any part of) plural activity, and thus fails to unambiguously define the unit of prosecution in singular terms." (*Id.* at p. 667.)

Finding that neither the statute's legislative history nor the overall statutory scheme of which it was a part resolved the ambiguity, the court held that each defendant had committed only one offense. (*Kinsley, supra,* 518 F.2d at p. 670.) Various other circuits have reached the same conclusion under the same statute. (See *United States* v. *Valentine* (10th Cir. 1983) 706 F.2d 282, 293; *United States* v. *McCrary* (5th Cir. 1981) 643 F.2d 323, 325-328; *United States* v. *Rosenbarger* (6th Cir. 1976) 536 F.2d 715, 720-721, cert. den. 431 U.S. 965 [53 L.Ed.2d 1060, 97 S.Ct. 2920]; *United States* v. *Calhoun* (7th Cir. 1975) 510 F.2d 861, 869, cert. den. 421 U.S. 950 [44 L.Ed.2d 104, 95 S.Ct. 1683].)

Various federal circuit courts have reached a similar conclusion under title 18, section 922(h) of the United States Code which makes it unlawful for certain persons to receive "*any* firearm or ammunition which has been shipped or transported in interstate or foreign commerce." (Italics added; see *United States* v. *Pelusio* (2d Cir. 1983) 725 F.2d 161, 169, fn. 3, and authorities there cited; see also *United States* v. *Deaton* (5th Cir. 1972) 468 F.2d 541 [statute punishes "Whoever willfully harbors or conceals any prisoner"; Congress did not intend number of sentences to be determined by number of prisoners concealed].)

By way of contrast, where a prohibitory statute refers to "a firearm" rather than to "any firearm" courts have found no ambiguity and have upheld separate conviction or punishment for each unlawful weapon possessed. Thus, in *United States* v. *Alverson* (9th Cir. 1982) 666 F.2d 341 the defendant possessed, among other weapons, three unregistered machine guns simultaneously in his residence. (P. 344.) For those offenses he was convicted of three counts of violation of 26 United States Code section 5861(d) which in relevant part makes it "'unlawful for any person—(d) to receive or possess *a* firearm . . . .'" (*Id.* at p. 347, italics in original.) The defendant contended a conviction and sentence for each weapon possessed was impermissible because all were possessed at the same time and place. (*Id.* at p. 346.) The court rejected that contention, explaining that "Use of the article 'a' [in the statute] stands in marked contrast to language in other

weapons statutes that have been interpreted to preclude prosecution for each object of the offense. (*Compare United States* v. *Brown* 623 F.2d at 58 (use of 'any') *with Sanders* v. *United States,* 441 F.2d at 414-415 (use of 'a').)" (*Id*. at p. 347; see also *Grappin* v. *State* (Fla. 1984) 450 So.2d 480, 481-483.)

This substantial body of federal law persuades us that former section 12020, subdivision (a) is facially ambiguous. As noted, the statute is directed at "Any person . . . who . . . possesses . . . *any* instrument or weapon . . . ." (Italics added.) By its use of the term "any" rather than "a," the statute does not necessarily define the unit of possession in singular terms. (*Kinsley, supra,* 518 F.2d at p. 667.) The statutory ambiguity is compounded by section 7 which provides in pertinent part that "the singular number includes the plural, and the plural the singular; . . ." "The rule of construction enunciated in section 7 is no mere rubric—it is the law." (*People* v. *Jones* (1988) 46 Cal.3d 585, 593 [250 Cal.Rptr. 635, 758 P.2d 1165].) Read together, former section 12020, subdivision (a) and section 7 fail to provide any warning that separate convictions will result for each weapon simultaneously possessed.

Although we have been cited no legislative history shedding light on the Legislature's intentions in enacting former section 12020, subdivision (a), we have looked for some appropriate clue on our own. We have found none illuminating the issue tendered here.

In the circumstances, defendant is entitled to the benefit of the statutory ambiguity. ■ In *People* v. *Anderson* (1987) 43 Cal.3d 1104 [240 Cal.Rptr. 585, 742 P.2d 1306] our Supreme Court emphasized a defendant is entitled to the benefit of every realistic doubt as to the construction of words used in a statute. (P. 1145; see *In re Robert S.* (1979) 92 Cal.App.3d 355, 364 [154 Cal.Rptr. 832].) ■ The reality of the doubt in this case is attested to by the numerous federal cases discussed above. Moreover, in *People* v. *Puppilo, supra,* 100 Cal.App. 559, the court held a defendant could be convicted of but a single offense where two pistols were found in his residence in violation of a statute prohibiting the possession of "*any* pistol, revolver or other firearm capable of being concealed upon the person." (*Id*. at pp. 560, 562, italics added.) We perceive no material distinction between the statutory language at issue in *Puppilo* and that at issue here. We therefore conclude defendant should not have been convicted of multiple violations of section 12020 for his contemporaneous possession of two illegal weapons. (*Ibid*.). In view of this conclusion, we do not consider defendant's contention that section 654 bars punishment for more than one violation of former section 12020.

■ Defendant also contends he cannot be punished at all for *any* violation of section 12020 because section 654 bars the punishment. Defendant argues his possession of unlawful weapons was transactionally a part of the burglaries for which he was also punished. However, because the weapons were sawed off after the burglaries and his possession of the weapons occurred at a time and place remote from the burglaries, section 654 does not bar punishment for the weapons offense. (*People* v. *Alvarado* (1982) 133 Cal.App.3d 1003, 1029 [184 Cal.Rptr. 483].) Defendant may be punished for one count of violation of former section 12020, subdivision (a).

Defendant received identical eight-month consecutive terms for each conviction of former section 12020. We shall reverse the conviction on count IV and modify the sentence imposed by deleting the corresponding eight months.

## DISPOSITION

Defendant's conviction on count IV of violation of former section 12020, subdivision (a), is reversed. The judgment is modified to reflect a total unstayed state prison term of 18 years. As modified, the judgment is affirmed. The trial court is directed to amend the abstract of judgment and to forward a copy to the Department of Corrections.

Puglia, P. J., and Sparks, J., concurred.