74 Cal.Rptr.3d 446 (2008)
161 Cal.App.4th 980
The PEOPLE, Plaintiff and Respondent,
v.
Victor CORREA, Defendant and Appellant.
No. C054365.
Court of Appeal of California, Third District.
April 4, 2008.
*447 Conrad Petermann, under appointment by the Court of Appeal, Beverly Hills, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Charles A. French, Supervising Deputy Attorney *448 General, Robert C, Nash, Deputy Attorney General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]
BUTZ, J.
A jury found defendant Victor Correa guilty of seven counts of being a felon in possession of a firearm (Pen.Code, § 12021, subd. (a)(1))[1] and one count of receiving stolen property (§ 496d, subd. (a)). The trial court sentenced him to an aggregate term of 200 years to life.
Defendant appeals, contending that (1) six of the seven sentence terms for firearm possession must be stayed pursuant to section 654, and (2) the sentence of multiple, consecutive life terms without the requisite jury findings violated his Fifth, Sixth, and Fourteenth Amendment rights under Cunningham v. California (2007) 549 U.S. ___, 127 S.Ct. 856, 166 L.Ed.2d 856 (Cunningham), Blakely v. Washington (2004) 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (Blakely), and Apprendi v. New Jersey (2000) 530 U.S. 466, 147 L.Ed.2d 435, 147 L.Ed.2d 435 (Apprendi). We shall order the abstract amended but otherwise affirm the judgment.

FACTUAL BACKGROUND

A. Prosecution's Case
On February 4, 2006, Sacramento Police Officer Kevin Howland was dispatched to a two-story residence at 60 Tundra Way at approximately 5:07 p.m. in response to a report of firearms being moved into the house. Two cars were parked in the drivewaya black Mustang and a silver Nissan. A third car, a green Lexus, was parked nearby on the street. The drivers of the Lexus and Mustang were observed entering the house and the garage of the residence.
Officer Howland radioed the vehicle identification number of the Lexus to dispatch and discovered that it was stolen. It was later discovered that the other two cars were also stolen. Officer Howland also identified defendant from a series of computer mug shots as the driver of the Lexus.
The driver of the Mustang and two females who had emerged from the residence were detained. Defendant barricaded himself inside the residence.
Members of the Sacramento Police Department SWAT team surrounded the residence and fired tear gas grenades into the house. The officers heard defendant's muffled voice coming from a closet under the stairs.
SWAT team member Officer William McCoin opened the closet door and heard defendant say he was stuck in the back of the closet. On the floor of the closet were numerous long gun cases containing rifles and shotguns,[2] and two shotguns without cases. Officer McCoin tore a hole in the back wall of the closet and discovered defendant lying on the ground under the stairs.
During a subsequent search of the premises, officers found a shotgun and a rifle in gun cases behind a couch in a downstairs room; a duffel bag containing 20-gauge shotgun shells in an upstairs bedroom closet; a duffel bag containing 12-gauge shotgun shells and .22-caliber rifle ammunition, as well as letters addressed to defendant, in the garage; paperwork with defendant's name in an upstairs bedroom; and a key to the Lexus and paperwork for the vehicle in an upstairs bedroom.
*449 Defendant's neighbor testified that she had seen defendant "on two or three occasions" carrying firearms while he was visiting her house or while she was visiting his home.

B. Defense Case
Defendant's mother testified that she and her husband owned the residence at 60 Tundra Way, and that defendant lived there along with her other son and his girlfriend, and her son-in-law. She stated that the Ford Mustang in the driveway belonged to her husband, that the Lexus may have belonged to her son's girlfriend who was living at the house, and that she had never seen defendant drive any of the stolen cars. She stated that she never saw any guns or gun cases in the house, and did not want guns in her home.

C. Verdict
Defendant was charged with nine counts of being a felon in possession of a firearm (Pen.Code, § 12021, subd. (a)(1)), one count of unlawful taking of a motor vehicle (Veh.Code, § 10851, subd. (a)), and three counts of receiving stolen property (Pen. Code, § 496d, subd. (a)). The jury convicted him of seven counts of being a felon in possession of a firearm and guilty of one count of receiving stolen property. By its verdict, the jury determined that defendant possessed all the guns found in the closet, but not the two guns discovered in the downstairs room.

D. Sentencing
Defendant waived jury trial on three prior felony conviction allegations, and the prosecution dismissed one prior felony conviction allegation. The trial court found defendant had been convicted of two prior felonies within the meaning of sections 667, subdivision (b) through (i), and 1170.12, which qualified him for life sentencing under the three strikes law (§ 1170.12, subd. (c)(2)(A)(ii)). The court sentenced defendant to seven consecutive terms of 25 years to life on each count of being a felon in possession of a firearm and an additional consecutive term of 25 years to life for receiving stolen property. Defendant's aggregate sentence was therefore comprised of eight consecutive terms of 25 years to life.

DISCUSSION

I. Section 654
Defendant asserts that the sentences for six of the seven firearm possession offenses[3] "arose from a single incident in which he was found with seven firearms stacked on the floor in a below stairs closet near his feet." Defendant contends the sentences on all firearm offenses but one must be stayed pursuant to section 654 "because they were part of an indivisible transaction." (Ibid.) In rejecting a similar argument by defendant's trial counsel, the trial court stated:
"They are individual, in the Court's view, separate crimes. So the only time a Court stays a sentence is if it qualifies under Penal Code Section 654, and then the Court would impose the sentence but stay it. In this case, I'm finding that each one of these is a separate and individual offense with a separate and individual purpose and, therefore, I'm not finding [section] *450 654. And, frankly, where that might apply and the only place I think it would apply in this case, if it did at all, would be Counts [two] through [seven] because that wasI guess you'd call it, a cache, c-a-c-he, of weapons and so Counts [two] through [seven] are each an individual weapon andbut the Court is finding that each of those is an individual and separate weapon, each had its own ammunition, and in the Court's view, there would be a different purpose and a different crime for each of those individual weapons and that's how the Court is addressing it. Not to say that you might want to make a [section] 654 argument as to Counts [two] through [seven], but my tentative ruling is, I'm not doing that. Or, my tentative sentence, rather, is that I am not. I am treating them individually and separately."
Defense counsel argued that the possession of all seven weapons was just "one act" rather than "a sequence of acts." In response, the prosecutor stated, "This is a case where each individual, separate weapon is a crime in and of itself' and that each gun "could be used separately" and "at different times." After hearing these arguments, the trial court reaffirmed its tentative ruling.
In relevant part, section 654 provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) "[I]t is well settled that section 654 applies not only where there was but one act in the ordinary sense, but also where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction. [Citation.] Whether a course of conduct is indivisible depends upon the intent and objective of the actor." (People v. Perez (1979) 23 Cal.3d 545, 551, 153 Cal. Rptr. 40, 591 P.2d 63 (Perez).) "A trial court's implied finding that a defendant harbored a separate intent and objective for each offense will be upheld on appeal if it is supported by substantial evidence." (People v. Blake (1998) 68 Cal.App.4th 509, 512, 80 Cal.Rptr.2d 308.)
As the court in Perez explained, the purpose of section 654's protection against multiple punishments is to ensure that the defendant's punishment will be commensurate with his culpability. (Perez, supra, 23 Cal.3d at p. 551, 153 Cal. Rptr. 40, 591 P.2d 63.) Thus, for example, the court in People v. Lopez (2004) 119 Cal.App.4th 132, 13 Cal.Rptr.3d 921, ruled that separate punishments for possession of a firearm and possession of ammunition inside the gun violated section 654. The court reasoned that since all of the ammunition was loaded into one firearm, both offenses comprised an indivisible course of conduct. (Id. at p. 138, 13 Cal.Rptr.3d 921.) On the other hand, section 654 does not preclude multiple punishment of a defendant who commits a single act of violence with the intent to harm more than one victim. (See Neal v. State of California (1960) 55 Cal.2d 11, 20-21, 9 Cal.Rptr. 607, 357 P.2d 839.)
Section 12021, subdivision (a)(1) states, "Any person who has been convicted of a felony ... and who owns, purchases, receives, or has in his or her possession or under his or her custody or control any firearm is guilty of a felony." (Italics added.) In People v. Kirk (1989) 211 Cal. App.3d 58, 259 Cal.Rptr. 44 (Kirk), the court held that section 654 barred multiple punishment for defendants simultaneous possession of two sawed-off shotguns in violation of a former version of section 12020, subdivision (a): "`Any person ... who ... possesses ... any instrument or *451 weapon ... known as a ... sawed-off shotgun ... is guilty of a felony.'" (Kirk, at p. 60, 259 Cal.Rptr. 44.) The court found that the word "any" was ambiguous and failed to warn the offender that separate convictions would result for each weapon simultaneously possessed. (Id. at p. 65, 259 Cal.Rptr. 44.)
In response to Kirk's ruling, the Legislature amended section 12001 to add subdivision (k), which states: "For purposes of Sections 12021, ... notwithstanding the fact that the term `any firearm' may be used in those sections, each firearm ... shall constitute a distinct and separate offense under those sections." (§ 12001, subd. (k).)[4]
The trial court's imposition of a separate sentence for each of the weapons defendant unlawfully possessed is fully consistent with the Legislature's expressed intent that a felon's possession of each firearm be deemed a distinctly punishable offense.
There is also factual support for the trial court's determination that defendant's possession of each firearm had a "separate and individual purpose." Each weapon had its own ammunition and, therefore, each could serve a different purpose or be used to commit a different crime. The fact that the firearms were of different makes and calibers indicated that defendant harbored separate objectives for possessing each one.
Defendant's conduct on the night in question also supports the trial court's finding. Witnesses observed that the firearms were being moved into defendant's home and defendant was discovered hiding in a closet under the stairs. The trial court could infer that defendant was stockpiling different firearms for a variety of future uses.
We reject defendant's argument that "the gravitas of the offense of simple possession of a firearm was not enhanced by the addition of the second, third, or even seventh firearm." As the trial court noted, these were "dangerous weapons, shotguns, rifles ... [a]nd this was a very dangerous crime." The purpose of section 12021 is to protect public welfare by precluding the possession of guns by those who are more likely to use them for improper purposes (People v. Pepper (1996) 41 Cal.App.4th 1029, 1037, 48 Cal.Rptr.2d 877, citing People v. Bell (1989) 49 Cal.3d 502, 544, 262 Cal.Rptr. 1, 778 P.2d 129), and to provide a greater punishment to an armed felon than to another (People v. Winchell (1967) 248 Cal.App.2d 580, 597, 56 Cal.Rptr. 782).
Defendant's claim that there were no multiple objectives as a matter of law because he was capable of firing only one weapon at a time is unconvincing. A felon who possesses multiple weapons that can be used to accomplish different objectives is inherently more dangerous than one who possesses only one. Defendant's culpability increased with each additional weapon in his possession. (Perez, supra, *452 23 Cal.3d at pp. 550-551, 153 Cal.Rptr. 40, 591 P.2d 63; see People, v. Trotter (1992) 7 Cal.App.4th 363, 367-368, 8 Cal.Rptr.2d 648 [separate punishment for three counts of assault with a firearm arising from three gunshots fired at one victim, did not violate section 654, since the defendant's conduct became more egregious with each successive shot].)
We conclude that defendant was properly punished for each of the seven firearm possession counts.[5]

II. Constitutional Challenges[**]

III. Error on Abstract of Judgment
We note a typographical error in item 1. of the abstract of judgment. Defendant was convicted in count twelve of possession of a stolen vehicle, a violation of section 496d, subdivision (a). The abstract sets forth the violation as "PC 406." We will direct the trial court to correct the code section.

DISPOSITION
The trial court shall prepare an amended abstract of judgment to reflect that defendant was convicted in count twelve of a violation of Penal Code section 496d, subdivision (a) and not section "406." As amended, the judgment is affirmed.
We concur: SIMS, Acting P.J., and MORRISON, J.
NOTES
[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II of the Discussion.
[1] Undesignated statutory references are to the Penal Code.
[2] One of the gun cases containing a .22-caliber Marlin rifle also had ammunition in a small bag next to the weapon.
[3] The weapons associated with each conviction were:

Count one, a Stevens .410 shotgun;
Count two, a .22-caliber Marlin rifle;
Count three, a 12-gauge Winchester shotgun;
Count four, a .22-Remington rifle;
Count five, an 8-millimeter rifle;
Count six, a .22-caliber Marlin rifle; and
Count seven, a 12-gauge Master Mag shotgun.
[4] In 1994, the Legislature stated: "The amendments to Section 12001 of the Penal Code made by this act adding subdivision[] (k) ... thereto are intended to overrule the holding in [Kirk, supra], 211 Cal.App.3d 58, 259 Cal.Rptr. 44 [a 1989 case], insofar as that decision held that the use of the term `any' in a weapons statute means that multiple weapons possessed at the same time constitutes the same violation. It is the further intent of the Legislature in enacting this act that where multiple weapons are made, imported, transferred, received, or possessed, each weapon shall constitute a separate and distinct violation." (Legis. Counsel's Dig., Sen. Bill No. 37, 5 Stats.1994 (1993-1994 1st Ex.Sess.) ch. 32, § 5, pp. 8657-8658; see hist, notes, 51D West's Ann. Pen.Code (2008 supp.) foll. § 12001, p. 4.)
[5] Defendant's related argument, that under Apprendi he had the right to have a jury determine whether his firearm possession involved "separate acts or a single act of aberrant behavior" pursuant to section 654, is contrary to settled case law. (See People v. Cleveland (2001) 87 Cal.App.4th 263, 270, 104
[**] See footnote *, ante.