Filed 5/15/26  P. v. Fredrick CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JEFFEREY LOUIS FREDRICK,<br><br>Defendant and Appellant. | F089102<br><br>(Super. Ct. No. SC060457A)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  David Wolf, Judge.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Darren K. Indermill and William C. Moine, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Jefferey Louis Fredrick, who is serving three consecutive terms of 25 years to life pursuant to the Three Strikes law plus 10 years for two prior serious felony enhancements (among other things), petitioned for resentencing under Penal Code[1] section 1172.75. Following a resentencing hearing, the trial court dismissed prior prison term enhancements under section 667.5, former subdivision (b) but elected not to dismiss any strike priors or serious felony priors.[2]

On appeal, defendant contends the court's sentencing decision constituted an abuse of discretion because "the court either misunderstood its discretion or failed to give adequate weight to his mitigating factors and evidence of post-conviction rehabilitation" and "the record does not support by clear and convincing evidence a finding that a lesser term would endanger public safety." We find no abuse of discretion, however. Defendant also contends: (1) the trial court "erred by awarding fewer presentence conduct credits than the original sentencing" (capitalization omitted); and (2) in view of section 1465.9, subdivision (d), a $200 restitution fine and a $350 direct victim restitution order "should be vacated as authorized because they are more than 10 years old."

The Attorney General concedes "the resentencing court failed to properly include the original sentencing court's calculation of [defendant's] presentence conduct credits" and the $200 restitution fine must be vacated. We accept these concessions. On the other hand, we conclude section 1465.9, subdivision (d) does not apply to the $350 direct victim restitution order.

---

[1] Unless otherwise indicated, subsequent statutory citations refer to the Penal Code.

[2] A "strike prior" refers to a felony conviction that triggers the Three Strikes sentencing scheme. (*People v. Fletcher* (2025) 18 Cal.5th 576, 582.)

## BACKGROUND

### I. The incidents[3]

a. *Count 11 (vehicle theft)*

On October 6, 1994, a Bakersfield police officer pulled over a motorcycle. Defendant, the rider, attempted to flee but was apprehended. The officer determined the motorcycle had been stolen on September 25, 1994, and " 'cold plated.' " Defendant was booked into county jail. He was released on October 11, 1994.

b. *Counts 1 (first degree burglary), 2 through 4 (attempted robbery), and 5 through 7 (assault with a firearm)*

On October 13, 1994, defendant and Kevin Wilson arrived at the residence of G.T., K.T., and M.O. impersonating utility workers. When M.O., a 15-year-old minor, answered the door, defendant and Wilson pulled out a firearm and a knife, respectively, and charged in. Defendant forced M.O. to the floor, pointed the gun at him, and said, " 'If there's anyone else here, you'd better tell them to come on out or I'll shoot you!' " M.O. yelled, " '[G.T.], he's got a gun; just come out.' " After G.T. and K.T. emerged, defendant "shouted that he wanted money, or he would kill them." When the victims' dog tried to bite defendant, defendant shot the dog twice and killed it.

While Wilson held M.O. at knifepoint, defendant brought G.T. and K.T. into a bedroom and "continued to demand money." Eventually, Wilson brought M.O. into the room. When the victims insisted they did not have any money, defendant "ordered them to lie face down on the floor." Defendant handed the firearm to Wilson, "produced a roll of duct tape," and stated "he was going to bind their hands with tape." Before defendant could do so, B.T. (G.T. and K.T.'s mother and M.O.'s grandmother) drove up to the residence and "honked her car horn." G.T., who believed he, K.T., and M.O. "would be executed once they were bound," tussled with defendant and Wilson. Wilson "slashed

---

[3] We base these facts, as did defendant and the People in the trial court and on appeal, on a 1995 probation report.

[G.T.]'s arm with the knife, but [G.T.] continued struggling with [defendant] and Wilson." At some point, G.T. chased defendant and Wilson out of the bedroom and K.T. "jumped through a glass window." Defendant retrieved the gun from Wilson and fired at G.T. The bullet missed G.T. and "entered the wall at the west end of the hallway." Defendant tackled G.T. and subsequently escaped through the back door.

Meanwhile, Wilson exited through the front door and passed B.T., who had approached the entrance after she "received no response when she honked her car horn." She contacted the police. Wilson was "forcibly detained in the street" by G.T., K.T., and a neighbor and eventually taken into custody. In an interview with law enforcement, Wilson stated defendant "had asked him to commit a robbery at a residence where there was $50,000 in cash, and possibly some marijuana." Wilson confirmed defendant "ordered people around" and "shot the dog."

c. *Count 10 (vehicle theft)*

On October 21, 1994, a Bakersfield police officer observed defendant driving a stolen automobile. The officer followed the vehicle into the parking lot of a restaurant and then activated his lights and siren. In response, defendant accelerated, but he lost control and drove into the restaurant wall. He again accelerated and struck a parked car. Defendant was arrested and booked into county jail.

## II. Defendant's convictions

On January 26, 1995, a jury convicted defendant of first degree burglary (§ 460, subd. (a) [count 1]), three counts of attempted robbery (§§ 212.5, subd. (a), 664 [counts 2–4]), three counts of assault with a firearm (§ 245, subd. (a)(2) [counts 5–7]), and two counts of vehicle theft (Veh. Code, § 10851, former subd. (a) [counts 10–11]). With respect to counts 1 through 7, the jury found true the allegation he personally used a firearm in the commission or attempted commission of the offense (§ 12022.5, former subd. (a)). With respect to counts 1 through 7, 10, and 11, defendant admitted he was previously convicted of residential burglary in 1981 and robbery in 1991—both of which

qualified as strike priors (§ 667, former subds. (c)–(j)) and serious felony priors (§ 667, former subd. (a))—and previously served five separate prison terms (§ 667.5, former subd. (b)).

## III. Sentencing history

At a February 28, 1995 sentencing hearing, the trial court imposed an aggregate indeterminate term of 125 years to life:  25 years to life on count 5; a consecutive 25 years to life on count 6; a consecutive 25 years to life on count 7; a consecutive 25 years to life on count 10; and a consecutive 25 years to life on count 11.  On each of counts 1 through 4, the court imposed 25 years to life but stayed execution thereof pursuant to former section 654.  On each of counts 1 through 7, 10, and 11, the court stayed imposition of the personal firearm use, prior serious felony, and prior prison term enhancements pursuant to former section 654 and section 667, former subdivision (e)(2).  Defendant was ordered to pay a $200 restitution fine pursuant to section 1202.4, former subdivision (b) and $350 in direct victim restitution pursuant to section 1202.4, former subdivision (f).  He was awarded 138 days of custody credit and 21 days of conduct credit.

In an opinion filed April 24, 1997, this court affirmed defendant's convictions, the true findings as to the special allegations and enhancements, and the aggregate indeterminate term of 125 years to life and also found the trial court improperly stayed imposition of the prior serious felony and prior prison term enhancements.  This court modified the judgment to add two consecutive five-year terms pursuant to section 667, former subdivision (a) and three consecutive one-year terms pursuant to section 667.5, former subdivision (b) for a total determinate term of 13 years to run consecutive to the indeterminate term.  As so modified and in all other respects, the judgment was affirmed. (See *People v. Fredrick* (Apr. 24, 1997, F023312) [nonpub. opn.].)

In September 2014, defense counsel moved for resentencing pursuant to the Three Strikes Reform Act of 2012 (§ 1170.126, added by Prop. 36, § 6, as approved by voters,

Gen. Elec. (Nov. 6, 2012)) (Three Strikes Reform Act).  Following a July 29, 2015 hearing, the trial court reduced defendant's overall sentence to 75 years to life plus 15 years eight months by lowering the terms on each of counts 10 and 11 to one year four months (one-third the doubled middle term).

On March 15, 2022, defense counsel petitioned for resentencing pursuant to former section 1171.1 (Stats. 2021, ch. 728, § 3), which has since been renumbered section 1172.75 (Stats. 2022, ch. 58, § 12).  At a March 30, 2022 resentencing hearing, defense counsel waived defendant's "personal presence" (capitalization omitted) and the trial court struck the prior prison term enhancements.

On November 21, 2023, defendant—proceeding in propria persona—filed a petition for writ of habeas corpus.  He argued:  (1) he was entitled to attend the March 30, 2022 hearing but was never notified thereof; and (2) defense counsel rendered ineffective assistance by failing to request a full resentencing and only asking for dismissal of the prior prison term enhancements.  The trial court issued an order to show cause and the prosecution filed a response conceding defendant was entitled to a full resentencing under section 1172.75 and to be present at the resentencing hearing.  Thereafter, the court granted writ relief.

On November 19, 2024, defendant filed a "PETITION/MOTION FOR MODIFICATION OF SENTENCE" asking the trial court to "strike the invalid . . . section 667.5[, former subdivision ](b) enhancement(s)," "conduct a full resentencing hearing," and "apply current sentencing rules in consideration of mitigating factors and the objective of ensuring equal justice and addressing systemic racial bias in sentencing." With regard to mitigating postconviction factors, he highlighted "his extensive and long-term participation in self-help and other positive programming[4]"; a low likelihood of a

_____

**4** Starting in 2016, defendant participated in various correspondence courses, cognitive behavioral therapy, reentry preparation, "Criminals and Gangs Anonymous," "Alcoholics Anonymous," "Narcotics Anonymous," "Criminon," "Lifers for Change,"

" 'criminal personality' " according to an " 'initial assessment' " by the Department of Corrections and Rehabilitation; "strong family support"; a low likelihood of "educational or employment problems"; his advanced age and attendant health issues; his imprisonment "basically since he turned 30"; and his classification "as less than a maximum security inmate since 2020." Defendant acknowledged "a disciplinary history which has at time involved allegations of violence or disruptive behavior" but pointed out "the last disciplinary violation occurred four years ago." He also asked the court to consider "ameliorative law" (boldface, underscoring & some capitalization omitted), including dismissal of strike priors pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*) and dismissal of serious felony priors pursuant to Senate Bills Nos. 1393 (2017–2018 Reg. Sess.) (Senate Bill No. 1393) (Stats. 2018, ch. 1013, §§ 1, 2) and 81 (2021–2022 Reg. Sess.) (Senate Bill No. 81) (Stats. 2021, ch. 721, § 1).

A section 1172.75 resentencing hearing was held on December 20, 2024. At the outset, the trial court stated it "had an opportunity to review everything" submitted by the defense; "has absolute authority" to "strike strikes" and "strike nickel priors"[5]; "has the authority in the interest of justice to reduce the sentence as it sees fit"; and "will use the current sentencing rules as outlined by the [J]udicial [C]oun[ci]l." Arguments commenced. Defense counsel—citing *Romero*—emphasized defendant "is 63 years old" and "passed the age where he's going to go out and pull crimes"; "all of his priors are over 30 years old"; "[h]e's been serving for 30 years" and "has not been prosecuted for anything new during that time"; "there is lots of opportunities to pick up new cases in prison for dope, for fighting, for anything else" and defendant "has not" and "did not surrender to temptation"; he "has committed himself to" "rehabilitation"; "he does work

---

"Anti-Reci[div]ism Coalition," "Freedom to Choose," and "Amity Foundation," among other things.

[5] A "nickel prior" refers to the five-year prior serious felony enhancement under section 667, subdivision (a). (*People v. Fletcher*, *supra*, 18 Cal.5th at p. 582.)

7.

at the prison" and "provided mentorship to younger inmates"; "he has family support"; "he has been very serious about being clean and sober and moving on from a life of substance abuse"; and "[h]e grew up in a hellish household" where he was subject to "physical abuse." Regarding an "assault on staff" in 2020, which "wasn't really a staff assault," defendant "was having trouble understanding orders that were being given to him during a search [of] his cell" because "[e]verybody was masked" due to COVID-19. Defense counsel asked for "all of [defendant]'s strikes [to] be stricken" and "his nickel priors [to] be stricken."

The prosecutor countered defendant's "priors are decades old because he has been incarcerated"; defendant's extensive criminal history prior to his imprisonment "date[d] back to 1973" and demonstrated he "lived a life where [he] engaged [in] one selfish act after another and culminating in about as grave an offense short of a murder as one could do"; and the October 13, 1994 home invasion "[wa]s as aggravated a robbery [as] could be." The court added:

> "My recollection of the facts are similar to yours. I believe they knocked on the front door wearing [utility] uniforms. [M.O.], 15 years old, answered the door. They put him to the ground. They put the gun to his head, and then they shot their dog in front of him . . . . The only reason this was not a homicide was apparently they waisted [*sic*] a couple of the rounds on the dog, and then fired one at his relatives. We are talking about having a rough childhood. I cannot imagine what it would be like to answer the door to two [utility] gentlem[e]n and to be knocked to the ground and have a gun shoved in my face and my head, and then watch my dog get murdered in front of me. But [defendant] has done some amazing things in the nine years."

Defense counsel admitted "the commitment offense was horrible and outrageous and shocking and traumatic and terrible" but insisted "that is not the question before [the Court]." The court interjected:

> "It is part of the question before me. I have to decide how [to] sentence . . . defendant today. If it had been a robbery with a couple of adults, no kid being put on the floor with a gun to his head, not murdering

8.

the kid's dog in front of him, not taking a shot at somebody and missing by the grace [of] God, that is a different robbery than other robberies. I do believe it is one of the factors. It is a long time ago, and I'm obviously going to give great weight to what he's done since. But I do believe it is important to give individual consideration. And as far as robber[ies] go, this is about as bad as they can get without being murder. . . ."

The court then added:

"I think just to clarify, I believe I'm looking to see if whether . . . defendant poses an unreasonable risk to society is the standard I'm looking at whether I'm going to treat somebody as a third striker. But in any event, I'm looking at the risk to the society. I also know that I'm looking at him now and in five years because he's older. . . ."

The prosecutor concluded defendant—despite his age and his "9 years of rehabilitative efforts in the 30 years that he's been in custody"—falls "squarely within the spirit of the 3 strikes law as a recidivism offender."

Thereafter, the court pronounced:

"As I mentioned this is one of the more challenging because of the nine years . . . where . . . defendant does seem to have a light bulb go off and was making excellent efforts. Unfortunately those efforts were interrupted by a 2020 assault on an officer. That is four years ago. I understand that . . . defendant believes that is a mitigated offense because of what has happened. He's explained it, but it does weigh heavily on this court's mind. . . . It looks like in 1977 he went to [the California Youth Authority] for a burglary, and it looks like he paroled December of '77 into Kern County from [the California Youth Authority]. 1981, he's convicted of [s]econd degree burglary. It looks like he gets paroled in '82. '82, he's picking up a [former section] 12025[, subdivision] (b). It says it's carrying a concealed weapon on a person. He violates parole in 1982. 1983, [former section] 12021, felon in possession of a firearm, 3 years prison. . . . 1986, it looks like he's got a [section] 415[, subdivision (]3[)], offensive words in public. I'm giving that little weight. '86, he violates parole again. '86, he's a felon in possession of a firearm again. '86, he's violating parole again, going to prison for 3 years on a [former section] 12020[, subdivision] (a). . . . '88, violated parole. '90, he's got a [section] 496[, former subdivision ]1 and a misdemeanor paraphernalia. . . . 1990, he's got a violation of parole. '91, a [former section] 12021[, subdivision] (a)(1), again a felon in possession of firearm. 1991, robbery [f]irst degree, five years prison out of Kern County. '91, battery on a person. '91, parole

9.

violation. '95, it looks like – . . . . [¶] . . . [¶] . . . That brings him to our case, the robbery and the burglary.[6] [¶] . . . [¶]

". . . With regards to exercising discretion under *Romero*, I do believe that he even as of today when it was just 4 years ago that he committed a rules violation of assaulting an officer, he is a risk to society. I do think he is an unreasonable risk to society. Although as he ages, and as he ga[in]s additional years . . . , he [may be] eligible. I think the [L]egislature [wa]s looking at changing the statute where people can bring these multi[ple] times. And, of course, he's got the opportunity with the Parole Board. The one-year priors are stricken although I believe they may have already been stricken, so we are doing a resentencing. They remain stricken. . . . I should say the Court is going to not exercise its discretion to strike the [nickel priors under section] 667[, subdivision] (a)[] or the [strike priors under section] 667[, subdivision] (e)[]. I already made my ruling about the risk. I do believe this is about the most serious robbery one could have without actually shooting the person. And in this case there was an attempt and a miss. But for the grace of God, the young man would have seen his dog murdered in front of them, and also one of his relatives shot. Luckily . . . defendant missed and that didn't happen. There was some distraction when apparently the mother, [or] it might have been grandmother arrived home, people started jumping out of windows and fighting back. I don't know what would have happened if they hadn't. In addition, the recent 2020 assault on [the] officer gives this court great concern. I am impressed with what you have been able to do during [your] time, but I do believe you need to keep up that. I would note that I would not be surprise[d] if [M.O.] who was 15 at the time is still facing a lifetime of tra[u]ma. So while you've had to be in custody this entire time, I do think you could do better than just 4 years. I think you could put sometime that you['re] rules violations free. . . ." (Italics added.)

The court dismissed the prior prison term enhancements and imposed an aggregate prison term of 75 years to life plus 15 years four months: 25 years to life, plus 10 years for the two prior serious felony enhancements, on count 5; 25 years to life on count 6; 25 years to life on count 7; a consecutive four years (the doubled middle term) on count 10; and a consecutive one year four months (one-third the doubled middle term) on count 11.

---

**6** The court read defendant's criminal record from a certified copy of a California Law Enforcement Telecommunications System printout submitted by the prosecution and entered into evidence.

The court reimposed the $200 restitution fine and the $350 direct victim restitution order. Defendant was awarded 11,036 credits: 11,017 days of custody credit and 19 days of conduct credit.

## DISCUSSION

### I. Pertinent laws

a. *Section 1172.75*

"Before January 1, 2020, section 667.5, subdivision (b) required trial courts to impose a one-year sentence enhancement for each true finding on an allegation the defendant had served a prior prison term and had not remained free of custody for at least five years. [Citation.] Effective January 1, 2020, Senate Bill No. 136 (2019–2020 Reg. Sess.) . . . amended section 667.5 by limiting the enhancement to only prior prison terms served for sexually violent offenses. [Citation.] Enhancements based on prior prison terms served for other offenses became legally invalid. [Citation.]" (*People v. Carter* (2023) 97 Cal.App.5th 960, 966.)

"In 2021, the Legislature enacted Senate Bill No. 483 (2021–2022 Reg. Sess.) . . . , which, among other things, made the changes implemented by Senate Bill [No.] 136 [(2019–2020 Reg. Sess.)] retroactive. [Citation.] Senate Bill [No.] 483 added former section 1171.1, later renumbered as section 1172.75 [citation], to the Penal Code. [Citation.]" (*People v. Carter*, *supra*, 97 Cal.App.5th at p. 966, fn. omitted.) Section 1172.75, subdivision (a) provides:

> "Any sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code is legally invalid."

"Once the Department of Corrections and Rehabilitation identifies those persons 'currently serving a term for a judgment that includes an enhancement described in subdivision (a)' to the sentencing court, 'the court shall recall the sentence and resentence

11.

the defendant.' " (*People v. Monroe* (2022) 85 Cal.App.5th 393, 399, quoting § 1172.75, subds. (b), (c).)[7]  Resentencing "shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety" (§ 1172.75, subd. (d)(1)) and "shall not result in a longer sentence than the one originally imposed" (*ibid.*).  "The court shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (*Id.*, subd. (d)(2).)  "The court may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (*Id.*, subd. (d)(3).)

    b.  *Section 1385, subdivision (a)*

"[A] judge or magistrate may, either on motion of the court or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." (§ 1385, subd. (a).)  Under this provision, "a trial court may exercise this power to dismiss allegations or findings that a defendant has previously been convicted of a serious and/or violent felony that would otherwise count as a 'strike' under the 'Three Strikes' law." (*People v. Dain* (2025) 18 Cal.5th 246, 252, citing *Romero*, *supra*, 13 Cal.4th at pp. 529–531.)

---

[7] The parties do not dispute defendant was thus identified by the Department of Corrections and Rehabilitation.

"[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, 'in furtherance of justice' pursuant to . . . section 1385[, subdivision ](a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*); accord, *People v. Dain*, *supra*, 18 Cal.5th at pp. 256–257.) "[N]o weight whatsoever may be given to factors extrinsic to the scheme, such as the mere desire to ease court congestion or, a fortiori, bare antipathy to the consequences for any given defendant." (*Williams*, *supra*, at p. 161.)

    c. *Sections 667, subdivision (a)(1) and 1385, subdivision (b)*

Before 2019, section 667, subdivision (a)(1) read:

"In compliance with subdivision (b) of Section 1385, any person convicted of a serious felony who previously has been convicted of a serious felony in this state or of any offense committed in another jurisdiction which includes all of the elements of any serious felony, shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately. The terms of the present offense and each enhancement shall run consecutively."

Before 2019, section 1385, subdivision (b) read:

"This section does not authorize a judge to strike any prior conviction of a serious felony for purposes of enhancement of a sentence under Section 667."

"On September 30, 2018, the Governor signed Senate Bill [No.] 1393 which, effective January 1, 2019, amends sections 667[, subdivision ](a) and 1385[, subdivision ](b) to allow a court to exercise its discretion to strike or dismiss a prior serious felony

13.

conviction for sentencing purposes." (*People v. Garcia* (2018) 28 Cal.App.5th 961, 971, citing Stats. 2018, ch. 1013, §§ 1–2.) The phrase "[i]n compliance with subdivision (b) of Section 1385" was removed from section 667, subdivision (a)(1). In addition, section 1385, subdivision (b) now reads in part:

> "(1) If the court has authority pursuant to subdivision (a) to strike or dismiss an enhancement, the court may instead strike the additional punishment for that enhancement in furtherance of justice in compliance with subdivision (a)."

"Prior to January 1, 2022, section 1385 provided trial courts with discretion to dismiss sentencing enhancements in the interest of justice. The statute did not provide direction as to how courts should exercise that discretion. In October 2021 the Legislature passed and the Governor signed Senate Bill No. 81 . . . , which, effective January 1, 2022, amended section 1385 to provide guidance regarding the exercise of discretion in dismissing sentencing enhancements." (*People v. Anderson* (2023) 88 Cal.App.5th 233, 238 (*Anderson*).) Senate Bill No. 81 added subdivision (c) to section 1385. (Stats. 2021, ch. 721, § 1.) This provision currently reads in part:

> "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.

> "(2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.

>> "(A) Application of the enhancement would result in a discriminatory racial impact as described in paragraph (4) of subdivision (a) of Section 745.

14.

"(B) Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed.

"(C) The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed.

"(D) The current offense is connected to mental illness.

"(E) The current offense is connected to prior victimization or childhood trauma.

"(F) The current offense is not a violent felony as defined in subdivision (c) of Section 667.5.

"(G) The defendant was a juvenile when they committed the current offense or any prior offenses, including criminal convictions and juvenile adjudications, that trigger the enhancement or enhancements applied in the current case.

"(H) The enhancement is based on a prior conviction that is over five years old.

"(I) Though a firearm was used in the current offense, it was inoperable or unloaded. [¶] . . . [¶]

"(4) The circumstances listed in paragraph (2) are not exclusive and the court maintains authority to dismiss or strike an enhancement in accordance with subdivision (a)." (§ 1385, subd. (c)(1)–(2), (4).)

"This language, taken together, explicitly and unambiguously establishes: the trial court has discretion to dismiss sentencing enhancements; certain circumstances weigh greatly in favor of dismissal; and a finding of danger to public safety can overcome the circumstances in favor of dismissal." (*Anderson*, *supra*, 88 Cal.App.5th at p. 239.)

## II. Standard of review

"We consider a trial court's sentencing decisions under an abuse of discretion standard of review." (*People v. Moseley* (2024) 105 Cal.App.5th 870, 874; see *People v. Dozier* (2025) 116 Cal.App.5th 700, 709 ["We review a court's sentencing decisions in a section 1172.75 resentencing proceeding for abuse of discretion."], review granted

15.

Feb. 11, 2026, S294597; *People v. Dryden* (2021) 60 Cal.App.5th 1007, 1029 ["We review the denial of a motion to dismiss a strike allegation for abuse of discretion."]; *People v. Shaw* (2020) 56 Cal.App.5th 582, 587 ["We review a court's decision to deny a motion to strike a five-year prior serious felony enhancement for an abuse of discretion."].) "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citation.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citation.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 376–377 (*Carmony*).) Ultimately, a reviewing court is "required to uphold [a discretionary] ruling if it is correct on any basis, regardless of whether such basis was actually invoked." (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32, citing *Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329.)

## III. Analysis

a. *The trial court did not abuse its discretion when it elected not to dismiss the strike priors.*

The record demonstrates the trial court recognized its authority to "strike strikes" and "reduce [defendant's] sentence" "in the interest of justice," used "the current sentencing rules as outlined by the [J]udicial [C]oun[ci]l," reviewed "everything" submitted by the defense, listened to counsels' arguments at the section 1172.75 hearing, and gave "individual consideration" to various factors. The court zeroed in on

16.

defendant's extensive criminal history before the October 13, 1994 home invasion, which began in 1977. This history included two strike priors (a second degree burglary conviction in 1981 and a first degree robbery conviction in 1991), other numerous convictions related to theft and unlawful firearm possession, and frequent parole violations. (See *People v. Philpot* (2004) 122 Cal.App.4th 893, 906–907 (*Philpot*) ["extensive," "serious," and "continuous" 20-year criminal history and parole violations among relevant considerations supporting denial of *Romero* motion].) Regarding the October 13, 1994 home invasion that led to defendant's present incarceration, the court described it as "about the most serious robbery one could have without actually shooting [a] person." Defendant (along with Wilson) dressed as a utility worker, which persuaded M.O. (a 15-year-old minor) to answer the door. Armed with a gun, defendant forced his way inside the residence and held M.O. at gunpoint, which compelled G.T. and K.T. to reveal themselves. Defendant threatened to kill the three occupants if they did not hand over money and then ended up shooting and killing their dog. Thereafter, because the occupants maintained they did not have any money, defendant ordered them to lie face down on the floor, took out a roll of duct tape, and indicated he would bind them. Had B.T. not fortuitously arrived outside the residence at that moment and provided a momentary distraction by honking her car horn, the occupants would have been rendered further susceptible to defendant's machinations. Instead, a struggle ensued. Before escaping, defendant shot at G.T., but the bullet missed its target. The court also mentioned the prospect of M.O. "facing a lifetime of tra[u]ma" due to this experience. (See *Williams*, *supra*, 17 Cal.4th at p. 163 ["There is little about [the defendant]'s present felon[ies] . . . that is favorable to his position. Indeed, there is nothing."]; *Philpot*, *supra*, at p. 907 ["seriousness of the present . . . offenses" among relevant considerations supporting denial of *Romero* motion].)

The court acknowledged the October 13, 1994 home invasion occurred "a long time ago." However, an analysis of the remoteness of criminal conduct "should consider

17.

whether the defendant 'was incarcerated a substantial part of the intervening time and thus had little or no opportunity to commit' additional crimes." (*People v. Vasquez* (2021) 72 Cal.App.5th 374, 390.) Such was the case here. Similarly, though defendant's strike priors "are over 30 years old," this cannot be considered a factor in mitigation because defendant "led a continuous life of crime after the[s]e prior[s]" (*People v. Humphrey* (1997) 58 Cal.App.4th 809, 813) up until he was imprisoned for the October 13, 1994 home invasion. (See *ibid.* ["In determining whether a prior conviction is remote, the trial court should not simply consult the Gregorian calendar with blinders on."].)

The court lauded defendant's "excellent [rehabilitative] efforts" since 2016, but—as the prosecutor highlighted below—these "9 years of rehabilitative efforts" constituted less than a third of "the 30 years that he's been in custody." The court also noted this nine-year period was "interrupted by a 2020 assault on an officer," which "weigh[ed] heavily on th[e] court's mind" despite defense counsel's attempt to downplay the event at the section 1172.75 hearing. The court expressed defendant "could do better than just 4 years" of being "rules violations free." (Cf. *Philpot*, *supra*, 122 Cal.App.4th at p. 907 ["lack of meaningful crime-free periods" among relevant considerations supporting denial of *Romero* motion].)

Weighing the foregoing factors, the court—which "look[ed] at [defendant] now and in five years"—concluded defendant was "an unreasonable risk to society," intimating it could not deem defendant to be "outside the [Three Strikes law]'s spirit" (*Williams*, *supra* 17 Cal.4th at p. 161) and treat him "as though he had not previously been convicted of one or more serious and/or violent felonies" (*ibid.*).[8] We conclude the court's decision to deny defendant's *Romero* motion was "neither irrational nor arbitrary

_____

[8] We note defendant raised other factors that the court did not directly address. "The court is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.)

and d[id] not constitute an abuse of its discretion." (*Carmony*, *supra*, 33 Cal.4th at p. 379.) We reject defendant's contention "the court either misunderstood its discretion or failed to give adequate weight to his mitigating factors and evidence of post-conviction rehabilitation." Where, as here, " 'the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' [citation]." (*Carmony*, at p. 378.)

b. *The trial court did not abuse its discretion when it elected not to dismiss the serious felony priors.*

Likewise, the record demonstrates the trial court recognized its authority to "strike nickel priors" and "reduce [defendant's] sentence" "in the interest of justice," used "the current sentencing rules as outlined by the [J]udicial [C]oun[ci]l," reviewed "everything" submitted by the defense, listened to counsels' arguments at the section 1172.75 hearing, and gave "individual consideration" to various factors. Under section 1385, subdivision (c)(2), "a finding of danger to public safety can overcome the circumstances in favor of dismissal." (*Anderson*, *supra*, 88 Cal.App.5th at p. 239; see *People v. Mendoza* (2023) 88 Cal.App.5th 287, 299 [§ 1385, subd. (c)(2) "does not require the trial court to consider any particular factors in determining whether 'there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others' "].) Here, the court "look[ed] at [defendant] now and in five years" (cf. *People v. Gonzalez* (2024) 103 Cal.App.5th 215, 228 [trial court's "singular focus on whether the defendant *currently* poses a danger" erroneous]) and determined defendant was "an unreasonable risk to society," which is analogous to being a danger to public safety. The court's finding is supported by the same rationale used to deny the *Romero* motion. (See *ante*, at pp. 16–19; see also *In re Marriage of Burgess*, *supra*, 13 Cal.4th at p. 32 [reviewing court ultimately "required to uphold [a discretionary] ruling if it is correct on any basis"].) We

conclude the court's refusal to dismiss the serious felony priors was neither irrational nor arbitrary and did not constitute an abuse of discretion.[9]

c. *Section 1172.75's "clear and convincing evidence" requirement does not apply in the instant case.*

On appeal, defendant contends the evidence "did not support the court's finding by clear and convincing evidence." He cites section 1172.75, subdivision (d)(1), which reads in part:

> "Resentencing pursuant to this section shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety."

By its plain language, section 1172.75 imposes a clear and convincing standard of proof[10] if—following dismissal of the prior prison term enhancements—resentencing does not result in a lesser sentence. (See *People v. Snook* (1997) 16 Cal.4th 1210, 1215 ["If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs."]; *People v. Reid* (2016) 246 Cal.App.4th 822, 830 [" 'Where [the Legislature] has manifested its intention, [courts] may not manufacture ambiguity in order to defeat that intent.' "]; *Morton Engineering &*

---

[9] On appeal, defendant perfunctorily suggests the trial court abused its discretion by failing to "impos[e] concurrent or low terms." "An appellate court is not required to examine undeveloped claims, nor to make arguments for parties." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106; see *Perry v. City of San Diego* (2021) 65 Cal.App.5th 172, 188, fn. 8 ["It is not this court's role to connect the dots."].) As we will not develop defendant's claim for him, we decline to address it. (See *Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1; see also *People v. Mitchell* (2008) 164 Cal.App.4th 442, 467 ["We will not address a claim that defendant has failed to develop."].)

[10] "The standard of proof known as clear and convincing evidence demands a degree of certainty greater than that involved with the preponderance [of the evidence] standard, but less than what is required by the standard of proof beyond a reasonable doubt. This intermediate standard 'requires a finding of high probability.' [Citations.]" (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 998.)

*Construction, Inc. v. Patscheck* (2001) 87 Cal.App.4th 712, 716 ["When statutory language is clear and unambiguous there is no need for construction, and we will not indulge in it."].) Here, the record demonstrates the trial court dismissed the prior prison term enhancements and defendant ultimately received a lesser sentence. Therefore, the court's findings supporting its decision not to dismiss the strike priors and serious felony priors were not beholden to a clear and convincing standard of proof.

      d. *At the section 1172.75 hearing, the trial court corrected the sentence imposed on count 10.*

Although the three one-year prior prison term enhancements were dismissed, the parties point out defendant's overall sentence was reduced by only four months. The record demonstrates: at the section 1172.75 hearing, the trial court imposed four years (the doubled middle term) on count 10 (vehicle theft); and nearly 30 years earlier, at the July 29, 2015 hearing on a motion for resentencing pursuant to the Three Strikes Reform Act, the court imposed one year four months (one-third the doubled middle term) on that count. Thus, while the recent court dismissed the prior prison term enhancements, it simultaneously increased the term on count 10 by two years eight months, resulting in a net decrease of four months.

Prior to the passage of the Three Strikes Reform Act, "[u]nder the original version of the three strikes law a recidivist with two or more prior strikes who is convicted of any new felony is subject to an indeterminate life sentence." (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 167.) Under the Three Strikes Reform Act, a defendant who has two or more strikes "is no longer necessarily subject to an enhanced sentence on a conviction for a third strike offense, if the third conviction is not for a serious or violent felony." (*People v. Johnson* (2016) 1 Cal.App.5th 953, 964.) Upon finding a defendant satisfies certain eligibility criteria, he or she must be resentenced as a second strike offender. (See § 1170.126, subd. (f); *People v. Buford* (2016) 4 Cal.App.5th 886, 894; see also § 667, former subd. (e)(1) ["If a defendant has one prior serious and/or violent felony conviction

21.

. . . that has been pled and proved, the determinate term or minimum term for an indeterminate term shall be twice the term otherwise provided as punishment for the current felony conviction."].)

As noted, in September 2014, defense counsel moved for resentencing pursuant to the Three Strikes Reform Act. Following a July 29, 2015 hearing, the trial court granted the motion with respect to the vehicle theft convictions (counts 10 and 11) and lowered the terms of each count from 25 years to life to one year four months (one-third the doubled middle term).[11] At the time of that resentencing (and still today), where a sentence includes multiple determinate terms, section 1170.1, subdivision (a) requires one to serve as a "principal term" and the balance to serve as "subordinate term[s]" subject to a "one-third the middle term of imprisonment" limitation. By subjecting the determinate terms on counts 10 *and* 11 to this limitation, however, the court improperly treated both as subordinate terms.

At the section 1172.75 hearing, the trial court imposed the doubled middle term of four years on count 10 and retained the one-third the doubled middle term of one year four months on count 11, removing the "one-third of the middle term of imprisonment" limitation on the former. The modification was warranted. (See *People v. Karaman* (1992) 4 Cal.4th 335, 349, fn. 15 ["[W]here the court is required to impose a certain minimum term but imposes a lesser term instead, the unauthorized sentence is considered invalid or 'unlawful' and may be increased even after execution of the sentence has begun."]; *People v. Codinha* (2023) 92 Cal.App.5th 976, 985 ["[T]he imposition of a sentence unauthorized by law is a jurisdictional error that may be corrected whenever it comes to the court's attention, even if correction requires imposition of a longer sentence."].)

---

[11] At the time of defendant's convictions, the sentencing triad for vehicle theft was 16 months, two years, and three years. (See Veh. Code, § 10851, former subd. (a).)

e. *The Attorney General concedes defendant is entitled to additional presentence conduct credits.*

The record demonstrates defendant was awarded 21 days of presentence conduct credit at the February 28, 1995 sentencing hearing. However, at the section 1172.75 resentencing hearing, he was only awarded 19 days thereof. Defendant contends—and the Attorney General concedes—he is entitled to two additional days of presentence conduct credit. We accept this concession. (See *People v. Guillen* (1994) 25 Cal.App.4th 756, 764 [erroneous computation of presentence credits "subject to correction by the trial court or the appellate court when presented"].)

f. *In view of section 1465.9, subdivision (d), the $200 restitution fine—but not the $350 direct victim restitution order—must be vacated.*

The record demonstrates defendant was ordered to pay a $200 restitution fine pursuant to section 1202.4, former subdivision (b) and $350 in direct victim restitution pursuant to section 1202.4, former subdivision (f) at the February 28, 1995 sentencing hearing. At the time of this proceeding, section 1202.4, subdivision (a)(3) read:

> "The court, in addition to any other penalty provided or imposed under the law, shall order the defendant to pay both of the following:
>
> "(A) A restitution fine in accordance with subdivision (b).
>
> "(B) Restitution to the victim, if any, in accordance with subdivision (f)." (As amended by Stats. 1994, ch. 1106, § 3.)[12]

Nearly 30 years later, at the section 1172.75 resentencing hearing, the court reimposed the two amounts, declaring each "remains in full force and effect."

Section 1465.9, subdivision (d) reads:

> "Upon the expiration of 10 years after the date of imposition of a restitution fine pursuant to Section 1202.4, the balance, including any collection fees, shall be unenforceable and uncollectible and any portion of a judgment

---

[12] This language more or less matches the current wording of section 1202.4, subdivision (a)(3).

imposing those fines shall be vacated." (Added by Stats. 2024, ch. 805, § 1.)

Citing this provision, defendant contends "[the] $200.00 section 1202.4, subdivision (b) restitution fine and [the] $350.00 section 1202.4, subdivision (f) restitution fine" "should be vacated as unauthorized because they are more than 10 years old." The Attorney General concedes "the $200 restitution fine should be vacated." We accept this concession.

Conversely, the Attorney General contends the $350 restitution order "was a direct victim restitution order" that "falls outside the ambit of section 1465.9." We agree. A plain reading of section 1465.9, subdivision (d) establishes the provision applies to "a *restitution fine* pursuant to Section 1202.4." (Italics added.) In turn, section 1202.4 differentiates restitution fines under subdivision (b) from direct victim restitution orders under subdivision (f). (See *People v. Snook*, *supra*, 16 Cal.4th at p. 1215 ["If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs."]; *People v. Reid*, *supra*, 246 Cal.App.4th at p. 830 [" 'Where [the Legislature] has manifested its intention, [courts] may not manufacture ambiguity in order to defeat that intent.' "]; *Morton Engineering & Construction, Inc. v. Patscheck*, *supra*, 87 Cal.App.4th at p. 716 ["When statutory language is clear and unambiguous there is no need for construction, and we will not indulge in it."].) "Restitution fines under subdivision (b) of section 1202.4 'are set at the discretion of the court in an amount commensurate with the seriousness of the offense and within a range set by statute,' and 'are not paid to the victim of the crime.' [Citation.] The money collected in restitution fines goes directly into state coffers. [Citation.]" (*People v. Evans* (2019) 39 Cal.App.5th 771, 776; see § 1202.4, subds. (b)–(e).) "A restitution fine . . . is punishment, and thus must relate to the defendant's individual culpability." (*People v. Kunitz* (2004) 122 Cal.App.4th 652, 657.) On the other hand, section 1202.4, subdivision (f) provides for " '[p]ayment of direct victim restitution' " (*People v. Evans*,

*supra*, at p. 776), which " 'goes directly to victims and compensates them for economic losses they have suffered because of the defendant's crime' " (*ibid.*). "Victim restitution is not punishment." (*People v. Kunitz*, *supra*, at p. 657.) Instead, it "is a substitute for a civil remedy so that victims of crime do not need to file separate civil suits." (*People v. Pangan* (2013) 213 Cal.App.4th 574, 585; see *People v. Kopp* (2025) 19 Cal.5th 1, 16 ["A victim restitution order is neither a fine nor an ancillary cost. It is also different from an order to pay a restitution *fine* . . . ."].) Because section 1465.9, subdivision (d) only applies to restitution fines, the $350 direct victim restitution order need not be vacated.

## DISPOSITION

The $200 restitution fine imposed pursuant to section 1202.4, former subdivision (b) is vacated. The trial court shall (1) prepare an amended abstract of judgment reflecting the foregoing restitution fine has been vacated and defendant is entitled to 11,038 days of credit (11,017 days of custody credit and 21 days of conduct credits); and (2) transmit certified copies thereof to the appropriate authorities. As so modified and in all other respects, the judgment is affirmed.

DETJEN, Acting P. J.

WE CONCUR:

PEÑA, J.

HARRELL, J.

25.